**KRONENBERGER ROSENFELD, LLP**

Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Ansel J. Halliburton (Bar No. 282906)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile:  (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
ansel@KRInternetLaw.com

Attorneys for Plaintiff
PhantomALERT, Inc.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PHANTOMALERT, INC.**, a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**GOOGLE INC.**, a Delaware corporation, **WAZE, INC.**, a Delaware corporation, and **DOES 1–10,** inclusive,<br><br>　　　　Defendants. | Case No. 3:15-cv-03986-JCS<br><br>**PLAINTIFF PHANTOMALERT, INC.'S OPPOSITION TO DEFENDANTS GOOGLE INC. AND WAZE, INC.'S MOTION TO DISMISS**<br><br>Date:　　　December 4, 2015<br>Time:　　　2:00 p.m.<br>Ctrm:　　　G – 15th Floor<br>Judge:　　　The Hon. Joseph C. Spero |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

ARGUMENT ...................................................................................................... 5

   A. PhantomALERT has pled a viable copyright infringement claim where it has
      alleged that Defendants copied and displayed a protectable work ....................... 5

     1. Analogous case law shows that the PhantomALERT database reflects more
        than enough creativity to be copyrightable ........................................................ 5

     2. The PhantomALERT database is not a process, but rather a specific
        expression of content in a tangible medium ................................................... 9

     3. The individual Points of Interest are also copyrightable because they reflect
        PhantomALERT's creativity and judgment ...................................................... 11

     4. PhantomALERT has expressly alleged that Defendants copied the
        PhantomALERT database ............................................................................ 12

   B. PhantomALERT has pled a viable conversion claim where it has alleged that
      Defendants took its Points of Interest database without its consent .............. 13

     1. PhantomALERT's conversion claim is not preempted where PhantomALERT
        has alleged elements in addition to copying ................................................. 14

     2. Conversion does not require a dispossession of the property at issue .......... 15

   C. Defendants disregard the express allegations of the complaint in arguing that
      Google is not liable to PhantomALERT ............................................................ 17

CONCLUSION ................................................................................................ 20

Kronenberger Rosenfeld

150 Post Street, Suite 520, San Francisco, CA 94108

# TABLE OF AUTHORITIES

**Cases**

*Assessment Technologies of WI, LLC v. WIREdata, Inc.*,
   350 F.3d 640 (7th Cir. 2003) ............................................................................ 12

*Baker v. Selden*,
   101 U.S. 99 (1879) ................................................................................... 10, 11

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,
   No. 13-55763, 2015 WL 5845415 (9th Cir. Oct. 8, 2015) ..................... 9, 10

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
   489 F.3d 1129 (11th Cir. 2007) .......................................................................... 8

*CDN Inc. v. Kapes*,
   197 F.3d 1256 (9th Cir. 1999) ................................................................. 6, 11

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
   16 F. Supp. 3d 1123 (S.D. Cal. 2014) .......................................................... 16

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
   16 F. Supp. 3d 1141 (S.D. Cal. 2014) .......................................................... 16

*City of New York v. Geodata Plus, LLC*,
   537 F. Supp. 2d 443 (E.D.N.Y. 2007) ............................................................ 8

*Cnty. of Suffolk, New York v. First Am. Real Estate Solutions*,
   261 F.3d 179 (2d Cir. 2001) .............................................................................. 8

*Craigslist Inc. v. 3Taps Inc.*,
   942 F. Supp. 2d 962 (N.D. Cal. 2013) ............................................................ 7

*Downing v. Mun. Court*,
   88 Cal. App. 2d 345 (1948) ............................................................................ 17

*Eckes v. Card Prices Update*,
   736 F.2d 859 (2d Cir. 1984) ............................................................................ 8

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) .......................................................................... 5

*Farmers Ins. Exch. v. Zerin*,
   53 Cal. App. 4th 445 (1997) .......................................................................... 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*,
   499 U.S. 340 (1991) ................................................................ 2, 5, 6, 13

*Franklin v. USX Corp.*,
   87 Cal. App. 4th 615 (2001) .......................................................................... 19

*G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc.*,
   958 F.2d 896 (9th Cir. 1992) ................................................................. 14, 15

*Herbert Rosenthal Jewelry Corp. v. Kalpakian*,
   446 F.2d 738 (9th Cir. 1971) .......................................................................... 10

*Honeywell Int'l, Inc. v. W. Support Grp., Inc.*,
   947 F. Supp. 2d 1077 (D. Ariz. 2013) ............................................................ 7

ii

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

*J & J Sports Prods., Inc. v. Flores*,
    913 F. Supp. 2d 950 (E.D. Cal. 2012) ................................................................ 14, 16

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ............................................................................ 14

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ............................................................................ 17

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012) ......................................................................... 10, 11

*Lee v. Hanley*,
    61 Cal. 4th 1225 (2015) ..................................................................................... 13

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) .............................................................................. 5

*Mason v. Montgomery Data, Inc.*,
    967 F.2d 135 (5th Cir. 1992) ................................................................................ 8

*Maudlin v. Pac. Decision Sciences Corp.*,
    137 Cal. App. 4th 1001 (2006) ........................................................................... 19

*McIntosh v. N. California Universal Enterprises Co.*,
    670 F. Supp. 2d 1069 (E.D. Cal. 2009) ........................................................... 10, 11

*Merch. Transaction Sys., Inc. v. Nelcela, Inc.*,
    No. CV 02-1954PHXMHM, 2009 WL 2355807 (D. Ariz. July 28, 2009) ................... 15

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
    888 F. Supp. 2d 691 (D. Md.) .............................................................................. 8

*Mohebbi v. Khazen*,
    50 F. Supp. 3d 1234 (N.D. Cal. 2014) ................................................................. 16

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) .............................................................. 14, 15

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................................. 17, 18

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ............................................................................ 13

*Salestraq Am., LLC v. Zyskowski*,
    635 F. Supp. 2d 1178 (D. Nev. 2009) ........................................................... 7, 8, 15

*Taylor v. Yee*,
    780 F.3d 928 (9th Cir. 2015) ................................................................................ 5

*Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*,
    231 Cal. App. 4th 134 (2014) ............................................................................. 17

**Statutes**

17 U.S.C. §102(b) ................................................................................................. 10

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

1    Plaintiff PhantomALERT, Inc. ("PhantomALERT") respectfully submits the
2  following memorandum of points and authorities in opposition to the Motion to Dismiss
3  filed by Defendants Google Inc. ("Google") and Waze, Inc. ("Waze"). [D.E. 19.]

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

6    PhantomALERT develops GPS-mapping applications. The applications sync with
7  PhantomALERT's database of various points of interest. Each point of interest
8  describes a different road hazard, speed camera, or other traffic condition. As
9  PhantomALERT users enter a geographic area, the applications alert the users to the
10  corresponding points of interest.

11    PhantomALERT uses a multi-step process to create each point of interest and to
12  organize those points of interest in its database. Among other things, PhantomALERT
13  revises the geographical data associated with each point of interest, evaluates the
14  importance of each point of interest, and removes points of interest that lack
15  corroboration or that have become stale. As a result, PhantomALERT's points of
16  interest do not reflect absolute facts, and the database does not reflect a complete set
17  of traffic conditions. Rather, the points of interest reflect PhantomALERT's best guess
18  as to what information will be most useful to users and what conditions are otherwise
19  noteworthy.

20    Without any authorization, Defendants copied PhantomALERT's points of
21  interest database and repurposed it for their competing applications. Based on
22  Defendants' conduct, PhantomALERT brought this suit and asserted claims for
23  copyright infringement and conversion. Defendants have moved to dismiss both claims.
24  However, Defendants have ignored the express allegations in the complaint while
25  repeating the predictable statement that the complaint "is almost entirely fact-free."
26  When one examines the straightforward allegations in the complaint, Defendants'
27  arguments fail, as summarized below.

28    • Contrary to Defendants' argument, PhantomALERT's database is copyrightable

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

because PhantomALERT's selection and arrangement of the points of interest reflect far more than the minimal level of creativity required under *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 345 (1991). PhantomALERT exercises discretion in editing, corroborating, arranging, and deleting the data in the points of interest database, and this authorship satisfies *Feist's* minimal creative spark standard.

- Second, the individual points of interest in the PhantomALERT database are also copyrightable. The individual points of interest comprise data selected and edited by PhantomALERT applying its discretion. Thus, these points of interest do not reflect incontestable facts, but rather PhantomALERT's opinion as to what information will be most useful to its users.

- Third, Defendants are incorrect that PhantomALERT must allege that Defendants accessed the protected work to state a copyright claim. Rather, PhantomALERT must allege that Defendants copied the protected work. PhantomALERT has expressly alleged that both Defendants copied the points of interest database.

- Fourth, PhantomALERT's conversion claim is not preempted because it includes elements not required for a copyright claim. Specifically, PhantomALERT has alleged that Defendants copied the database without authorization and with an intent to steal the database for their own commercial gain. Moreover, contrary to Defendants' argument, a dispossession of property is not required to state a conversion claim.

- Finally, PhantomALERT has stated claims against Google where: a) PhantomALERT has specifically alleged that Google engaged in the misconduct, and b) PhantomALERT has specifically alleged that Google and Waze merged, and Google assumed Waze's liabilities.

The complaint sets forth a straightforward explanation of PhantomALERT's claims, which are all legally viable. Thus, the Court should deny Defendants' motion to dismiss.

2

**BACKGROUND**

PhantomALERT has created GPS-based navigation applications for mobile phones and GPS devices (the "PhantomALERT Apps" or the "Apps"). (Compl. ¶17.) The Apps notify users of the presence of traffic conditions, road hazards, and traffic enforcement monitors, such as speed cameras (collectively, the "Points of Interest"). (Compl. ¶17.)  PhantomALERT maintains information about all of its Points of Interest in a database. (Compl. ¶18.)  The PhantomALERT Apps access the database when a user enters into the corresponding geographic area. (Compl. ¶18.)  The Apps then display the Points of Interest on a GPS-generated map. (Compl. ¶18.)

PhantomALERT uses a systematic process for creating the Points of Interest and arranging the Points of Interest in its database. (Compl. ¶19.)

• First, PhantomALERT allows users to submit potential Points of Interest to PhantomALERT through the Apps. (Compl. ¶20.)

• Second, PhantomALERT evaluates whether a user-submitted Point of Interest is a genuine Point of Interest based on a proprietary formula as well as human judgment. (Compl. ¶21.)  Among other things, PhantomALERT determines whether multiple users of the Apps have reported the same Point of Interest, thereby corroborating its existence. (Compl. ¶21.)  PhantomALERT also determines whether users of the Apps would consider the reported Point of Interest to be important. (Compl. ¶21.)  As an example, PhantomALERT may decide to omit a "speed trap" Point of Interest from its database after determining that the speed trap does not pose a significant risk to users of the Apps. (Compl. ¶21.)

• Third, PhantomALERT edits the geographic and other data associated with the Point of Interest so that the Point of Interest is displayed in the most helpful location on users' GPS-generated maps, with the optimal amount of advance warning to the users. (Compl. ¶22.)  As an example, the location from which a person reports a speed camera is typically not the actual location of the camera. (Compl. ¶22.)  Thus, PhantomALERT edits the geographic data associated with the speed camera and adds

3

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

data to alert users before they drive within range of the camera. (Compl. ¶22.)

• Fourth, PhantomALERT reviews the timing of the various users' reports for a particular Point of Interest to ensure that the Point of Interest remains relevant. (Compl. ¶23.)  As an example, PhantomALERT may remove a "speed trap" Point of Interest if no recent reports of the trap have been made. (Compl. ¶23.)

The PhantomALERT Apps do not seek to inform users of every road and traffic condition that has ever been reported or that has ever existed. (Compl. ¶24.)  Nor do the Apps seek to inform users of the exact location of such conditions. (Compl. ¶22.) Rather, the Apps seek to inform users of the Points of Interest that PhantomALERT believes will be the most relevant to users and at the geographic locations that will be most helpful to users. (Compl. ¶¶22–24.)   Using the above-described process, PhantomALERT creates, selects, and arranges the Points of Interest in a creative and original manner. (Compl. ¶25.)  On August 20, 2015, the United States Copyright Office issued a copyright registration for the PhantomALERT App source code and the Points of Interest database as a compilation, Registration No. TXu001954208. (Compl. ¶26.)

In June 2013, Defendant Google acquired all of the assets and liabilities of Defendant Waze, and Waze was merged into Google. (Compl. ¶31.)   Defendants compete with PhantomALERT in operating a GPS-based application, which provides route information and traffic details, including accidents, congestion, and speed and police traps. (Compl. ¶28.)   Like the PhantomALERT Apps, users of the Waze application report accidents, traffic conditions, and speed traps through the application, and thereby seek to streamline users' driving experience. (Compl. ¶29.)

On July 30, 2010, Noam Bardin, the CEO of Waze, contacted Yoseph Seyoum, the CEO of PhantomALERT, and proposed cooperating in the operation of their respective GPS-mapping companies. (Compl. ¶33.)  More specifically, Bardin proposed that Waze and PhantomALERT exchange their respective points of interest databases. (Compl. ¶34.)  Seyoum declined Bardin's offer because Waze did not appear to have substantial data to share. (Compl. ¶34.)

After Seyoum rejected Bardin's offer, Waze copied the PhantomALERT Points of Interest database in its entirety without any authorization. (Compl. ¶35.)  Waze also copied the PhantomALERT Points of Interest database on multiple, additional occasions after late 2012 as the database was updated. (Compl. ¶36.)  Waze incorporated the copied data into the Waze application in a modified form and displayed that data to users through the Waze application. (Compl. ¶¶37–38.)  Google continued to operate the Waze application after it acquired Waze in June 2013. (Compl. ¶32.)  Moreover, Google incorporated aspects of the Waze application, including information from the PhantomALERT Points of Interest database, into Google's own mapping services. (Compl. ¶52.)

## ARGUMENT

To survive a motion to dismiss, the complaint need only allege enough facts to state a claim for relief that is plausible on its face. *See Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To meet this standard, the complaint must allege factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). A court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party. *Taylor*, 780 F.3d at 935.

**A.      PhantomALERT has pled a viable copyright infringement claim where it has alleged that Defendants copied and displayed a protectable work.**

To state a claim for copyright infringement, a plaintiff must allege: (1) ownership of a valid copyright, and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act. *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). PhantomALERT has alleged facts that satisfy both of these elements.

**1.      Analogous case law shows that the PhantomALERT database reflects more than enough creativity to be copyrightable.**

To qualify for copyright protection, a work must be original to the author. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co. Inc.*, 499 U.S. 340, 345 (1991). "To be sure,

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   the requisite level of creativity is extremely low; even a slight amount will suffice." *Id.*

2   Factual compilations may possess this slight amount of creativity, as the compilation

3   author typically chooses what facts to include, in what order to place them, and how to

4   arrange the collected data so that they may be used effectively by readers. *See id.* at

5   348. "These choices as to selection and arrangement, so long as they are made

6   independently by the compiler and entail a minimal degree of creativity," are protectable

7   under the Copyright Act. *Id.* "Thus, even a directory that contains absolutely no

8   protectable written expression, only facts, meets the constitutional minimum for

9   copyright protection if it features an original selection or arrangement." *Id.* Significantly,

10  "the originality requirement is not particularly stringent" and "novelty is not required." *Id.*

11  at 358. Originality requires only that the author make the selection or arrangement

12  independently and that the work displays some minimal level of creativity. *Id.* Thus,

13  "[t]he vast majority of works make the grade quite easily, as they possess some creative

14  spark, 'no matter how crude, humble or obvious' it might be." *Id.* at 345 (quoting 1 M.

15  Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990)).

16       Several post-*Feist* cases illustrate courts' application of the *Feist* principles.

17  These cases also show that PhantomALERT's Points of Interest database is more

18  creative than necessary to warrant copyright protection (*i.e.* it is more than minimally

19  creative).

20       •    *CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999) – In this case, the Ninth

21  Circuit addressed whether prices in a wholesale coin price guide contained sufficient

22  originality to be copyrightable.[1]  *See id.* at 1257–58. The prices reflected a synthesis of

23  data selected by the publisher to estimate a coin's value. *See id.* at 1257–58, 1260. The

24  Ninth Circuit found that the spark of minimal originality "glows in CDN's prices, which

25  are compilations of data chosen and weighed with creativity and judgment." *Id.* at 1260.

26  _____

27  [1] *CDN* only addressed whether the individual coin prices themselves were copyrightable
    as a compilation and not whether the price list as a whole was copyrightable, as the
28  plaintiff did not allege that the defendant had copied the entire price list but only
    individual entries.

- *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962 (N.D. Cal. 2013) — In *Craigslist*, this Court addressed the copyrightability of Craigslist's structure for organizing classified ads. *See id.* at 966, 972. Craigslist organized its ads first by geographic area and then by category of product or service, and Craigslist claimed copyright protection in this compilation. *See id.* at 972. The Court denied the defendants' motion to dismiss Craigslist's copyright claim, finding that Craigslist had displayed the minimal level of creativity in deciding which categories to include and under what name. *See id.*

- *Honeywell Int'l, Inc. v. W. Support Grp., Inc.*, 947 F. Supp. 2d 1077 (D. Ariz. 2013) — In this case, the licensor of a copyrighted aircraft maintenance manual filed a copyright infringement claim against a distributor of the manual. *See id.* at 1078–79. FAA regulations controlled the "format" and "content" of such aircraft maintenance manuals. *See id.* at 1082. The defendant moved for summary judgment, arguing that the manual was not copyrightable because it was specifically dictated by the FAA regulations. *See id.* at 1079. The court rejected the argument, finding that while FAA regulations controlled the format and content of the manual, these requirements do "not foreclose the possibility that the author of an aircraft maintenance manual can exercise at least some creative control over the choosing, ordering, and/or arrangement of facts and procedures included in an aircraft maintenance manual." *Id.* at 1083.

- *Salestraq Am., LLC v. Zyskowski*, 635 F. Supp. 2d 1178 (D. Nev. 2009) — In this case, the court addressed a compilation of factual information about residential properties in the Las Vegas area, including information about properties' key attributes. *See id.* at 1179–80. The defendants moved to dismiss, arguing that the property listings were not copyrightable. *See id.* at 1181. The court denied the motion, finding that while the complaint:

> does not go into detail about the level of creativity inhering in the Information Content, SalesTraq plausibly alleges the Information Content coordinates or arranges the underlying Base Property Content in such a way that the Information Content possesses a *de minimis* quantum of creativity. In particular, authoring content regarding key attributes of

7

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1    properties implies a greater degree of creativity that the alphabetization
     rejected in *Feist.*

2    *Id.* at 1183.

3    •   *City of New York v. Geodata Plus, LLC*, 537 F. Supp. 2d 443 (E.D.N.Y.

4    2007) — This case addressed the copyrightability of digital geographic map files

5    containing coordinates and other data that permitted users to view vectorized images of

6    tax blocks in New York (the "Bytes Files"). *See id.* at 445–46. The court rejected the

7    defendant's motion to dismiss, finding that the manual selection of the coordinates in

8    the Bytes Files involved a distinctly human element in which independent decisions had

9    to be made. *See id.* at 452. The court went on to state, "[t]aking into consideration the

10   process by which the Bytes Files were created, as well as the other independent

11   decisions involved in their creation—*i.e.,* which sources to use, which features to

12   include or exclude—there is ample uncontested evidence of originality to surpass the

13   minimum *Feist* standard." *Id.*

14       Analogous cases from other jurisdictions reflect similar analyses. *See, e.g.,*

15   *Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984) (given selection,

16   creativity, and judgment exercised in choosing among 18,000 baseball cards to identify

17   5,000 premium cards, price guide merited copyright protection); *BUC Int'l Corp. v. Int'l

18   Yacht Council Ltd.*, 489 F.3d 1129, 1145 (11th Cir. 2007) (affirming denial of copyright

19   defendant's motion for judgment as a matter of law where the selection and

20   arrangement of data in a factual compilation of yacht prices was sufficiently creative to

21   be copyrightable); *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 141–42 (5th Cir.

22   1992) (finding that plaintiff's maps, which were based on government survey data and

23   drawn on U.S. Geological Survey maps, passed muster under *Feist* because plaintiff's

24   selection and arrangement of data were sufficiently creative); *Cnty. of Suffolk, New York

25   v. First Am. Real Estate Solutions*, 261 F.3d 179, 187–88 (2d Cir. 2001) (county's tax

26   maps, which contained original material and research had sufficient originality to be

27   copyrightable even though content and form of maps were dictated by state law and

28   regulations); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F.

Case No. 3:15-cv-03986-JCS                    8               **PLAINTIFF'S OPPOSITION TO
                                                              DEFENDANTS' MOTION TO DISMISS**

KRONENBERG ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1   Supp. 2d 691, 710 (D. Md.) *aff'd*, 722 F.3d 591 (4th Cir. 2013) (where database owner

2   "oversees and controls the quality and accuracy" of its database of more than 70,000

3   real estate listings uploaded by subscribers, database owner exhibited original selection

4   and arrangement sufficient to satisfy *Feist*).

5        As with the above cases, PhantomALERT exercises creativity in selecting and

6   arranging the Points of Interest in its database. Among other things, PhantomALERT

7   evaluates whether a user-submitted Point of Interest is bona fide, requiring a certain

8   number of user submissions of a particular Point of Interest in a given time period.

9   (Compl. ¶21.)  PhantomALERT also decides whether users would find a specific Point

10  of Interest to be useful while driving, and removes those Points of Interest that

11  PhantomALERT believes lack usefulness. (Compl. ¶21.)  Furthermore, PhantomALERT

12  edits the geographic data provided by users to maximize advance warning while still

13  preserving immediacy. (Compl. ¶22.)   Finally, PhantomALERT removes Points of

14  Interest as user corroboration decreases. (Compl. ¶23.)   As the complaint alleges,

15  PhantomALERT does not seek to mechanically capture all road conditions. (Compl.

16  ¶24.)  Rather, PhantomALERT exercises its discretion in arranging and maintaining its

17  Points of Interest database. (Compl. ¶24.)

18       In summary, PhantomALERT's selection and arrangement of the Points of

19  Interest in its database more than satisfy the "minimal level of creativity" needed for

20  copyright protection.

21       **2.      The PhantomALERT database is not a process, but rather a specific**

22              **expression of content in a tangible medium.**

23       Defendants also argue that the PhantomALERT database is not copyrightable

24  because the "processes described for arriving at the database are not expressive;

25  rather these are 'functional considerations at the heart of' the claimed work." (Mot. at

26  9:13–14.)  Defendants misunderstand the difference between a process and a tangible

27  expression of that process. Thus, Defendants' sole authority for its argument—*i.e.*

28  *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, No. 13-55763, 2015 WL

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

5845415 (9th Cir. Oct. 8, 2015)—is readily distinguishable.

The Copyright Act distinguishes between ideas and expression. Ideas, processes, procedures, etc. are not copyrightable. *See Bikram's Yoga Coll. of India*, 2015 WL 5845415 at *3; 17 U.S.C. §102(b). By contrast, the expression of an idea, process, or procedure in a tangible medium is copyrightable, so long as that expression is minimally creative. *See Bikram's Yoga Coll. of India*, 2015 WL 5845415 at *3. Thus, a copyright bars the use of the particular expression of an idea in a copyrighted work, but does not bar use of the idea itself. *See Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741 (9th Cir. 1971). Upholding this dichotomy, in *Baker v. Selden*, 101 U.S. 99, 101–02 (1879), the Supreme Court held that a book's expression of a book-keeping system was protectable, but the book-keeping system itself was not. More recently, in *Bikram's Yoga Coll. of India*, the Ninth Circuit found that a book describing yoga postures (*i.e.* asanas) was protectable, but the method of performing those asanas was not. *Bikram's Yoga Coll. of India*, 2015 WL 5845415 at *passim*. In *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012), the Ninth Circuit addressed the idea v. expression dichotomy in the context of a floral-patterned textile. While the court found that the idea of a textile design containing open flowers and closed buds in a single bouquet was not protectable, the plaintiff's original selection, coordination, and arrangement of such elements in a specific textile was protectable. *See id.* at 850–51. And in *McIntosh v. N. California Universal Enterprises Co.*, 670 F. Supp. 2d 1069, 1096 (E.D. Cal. 2009), the court found that the idea behind a subdivision map that created 68 residential lots could have been expressed in several ways by the plaintiff, and therefore the plaintiff's particular expression of the subdivision map was protectable.

Here, the parallels to *Baker*, *Bikram's Yoga*, *L.A. Printex*, and *McIntosh* are clear. PhantomALERT does not allege that its process for selecting and arranging its Points of Interest is copyrightable. Rather, PhantomALERT alleges that its specific expression of that process, namely its resulting Points of Interest database, is copyrightable. Thus,

PhantomALERT has not alleged that Defendants infringed its copyright by using PhantomALERT's process to develop their own database. Rather, PhantomALERT has alleged that Defendants infringed its copyright by copying the entire Points of Interest database, an expressive work resulting from that process.

PhantomALERT's database is no different than the books at issue in *Baker* and *Bikram's Yoga*, the textile at issue in *L.A. Printex*, or the map at issue in *McIntosh*, all of which the courts found to be protected expressions of unprotectable processes. By copying PhantomALERT's database—as opposed to simply using PhantomALERT's process for generating points of interest—Defendants engaged in copyright infringement. Thus, Defendants' idea v. expression argument fails.

3.    **The individual Points of Interest are also copyrightable because they reflect PhantomAlert's creativity and judgment.**

In addition to arguing that the PhantomALERT database is not copyrightable, Defendants argue that the individual Points of Interest are not copyrightable. Specifically, Defendants argue that PhantomALERT's Points of Interest are facts, and "one is perfectly free to use facts contained within a copyrighted database." (Mot. at 7:14.)  Defendants' argument fails.

As discussed above, in *CDN Inc. v. Kapes*, 197 F.3d 1256, 1257–60 (9th Cir. 1999), the Ninth Circuit addressed a similar situation:  *i.e.* whether coin values in a publisher's wholesale coin price guide were sufficiently original to sustain a copyright. The court found that "[t]he evidence indicates that the plaintiff uses its considerable expertise and judgment to determine how a multitude of variable factors impact upon available bid and ask price data. And it is this creative process which ultimately gives rise to the Plaintiff's 'best guess' as to what the current 'bid' and 'ask' prices should be." *Id.* at 1260.

PhantomALERT's Points of Interest are analogous to the protectable coin values in *CDN*. Specifically, a Point of Interest does not reflect an exact science or an undisputed fact. Rather, each Point of Interest reflects data that PhantomALERT has

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

selected and modified to provide users with PhantomALERT's "best guess" as to the most valuable and useful road and traffic information. (Compl. ¶¶20–24.) As an example, PhantomALERT exercises its expertise and judgment in deciding where to place a speed camera on its GPS-generated maps so as to provide users with maximum notice of the camera while still preserving the immediacy of the notification. (Compl. ¶22.)

Defendants rely on *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 642 (7th Cir. 2003) to argue that PhantomALERT's individual Points of Interest are not copyrightable. (Mot. at 7:6–13.) However, *Assessment Technologies* is distinguishable. In *Assessment Technologies*, the plaintiff owned a copyright to software used to compile real estate tax assessment data. *See id.* at 642. However, the actual tax assessment data was not created or collected by the plaintiff, but by tax assessors hired by municipalities. *See id.* No party contended that the underlying data provided by the tax assessors was protectable; rather, the plaintiff claimed that the defendant had infringed its copyright in the software program that contained the data. *See id.*

Here, by contrast, the Points of Interest comprise data that PhantomALERT selected, arranged, and modified to maximize the utility of its Apps. Unlike *Assessment Technologies*, where the data comprised undisputed facts provided by municipal tax assessors, each of PhantomALERT's Points of Interest reflects a set of data created and modified by PhantomALERT in its judgment and expertise. PhantomALERT's creation and modification of this data imbued each Point of Interest with sufficient creativity to satisfy the "extremely low" standard set forth in *Feist.*

In summary, because both the individual Points of Interest and the entire Points of Interest database are original works of authorship, they are protected by the Copyright Act.

**4.      PhantomALERT has expressly alleged that Defendants copied the PhantomALERT database.**

Defendants argue that to plead a claim for copyright infringement, the plaintiff

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1  must establish access to the copyrighted work, and that PhantomALERT has not done

2  so here. (Mot. at 9:23–10:4.)  Defendants are incorrect about both the law and the facts.

3      As discussed above, to state a claim for copyright infringement, a plaintiff must

4  allege (1) ownership of a valid copyright, and (2) copying of constituent elements of the

5  work that are original. *Feist Publ'ns, Inc.*, 499 U.S. at 361. The copying of the

6  constituent elements *may* be established by showing that the works in question are

7  substantially similar in their protected elements and that the infringing party had access

8  to the copyrighted work. *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir.

9  2003). Thus, contrary to Defendants' argument, proof of access is just one way to

10  establish unlawful copying, and the amount of access that needs to be proved depends

11  on the similarity of the infringing work.

12      Here, PhantomALERT has expressly alleged that Defendants copied the Points

13  of Interest database. Specifically, PhantomALERT has alleged that "Waze copied the

14  PhantomALERT Points of Interest database in its entirety in or around late 2012 without

15  any authorization or consent." (Compl. ¶35.)  PhantomALERT has also alleged that

16  "Google continued to operate the Waze application, which copied, modified, and

17  displayed copyrighted information from the PhantomALERT Points of Interest database,

18  after it acquired Waze in June 2013." (Compl. ¶41.)  And in order to copy a work, a party

19  must have accessed it.

20      In summary, Defendants have ignored the express allegations in the complaint in

21  arguing that Defendants did not copy (or have access to) PhantomALERT's Points of

22  Interest database.

23  **B.  PhantomALERT has pled a viable conversion claim where it has alleged**

24      **that Defendants took its Points of Interest database without its consent.**

25      To state a conversion claim under California law, a plaintiff must allege: (1) the

26  plaintiff's ownership or right to possession of the property; (2) the defendant's

27  conversion by a wrongful act or disposition of property rights; and (3) damages. *See*

28  *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). Intangible property may be the subject of

13

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  a conversion action. *See J & J Sports Prods., Inc. v. Flores*, 913 F. Supp. 2d 950, 963

2  (E.D. Cal. 2012). Here, PhantomALERT has adequately pled a conversion claim where

3  PhantomALERT has alleged that it owns the Points of Interest database and that

4  Defendants copied the database for their own use.

5     **1.    PhantomALERT's conversion claim is not preempted where**

6           **PhantomALERT has alleged elements in addition to copying.**

7     Defendants argue that the Copyright Act preempts PhantomALERT's conversion

8  claim. (Mot. at 10:15–11:15.)  More specifically, Defendants argue that "[w]hen the claim

9  for conversion is nothing more than unauthorized reproduction of an intangible work, as

10 opposed to actually taking another's physical property for oneself, the Copyright Act

11 preempts the claim." (Mot. at 10:27–11:1.)  This is incorrect.  Rather, the Copyright Act

12 preempts a state law claim when two elements are present. First, the rights asserted by

13 the plaintiff under state law must be equivalent to the rights protected by the Copyright

14 Act. Second, the work involved must fall within the "subject matter" of the Copyright Act.

15 *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998). When a state

16 law claim includes an additional element, not required for a copyright infringement

17 claim, the two claims are not equivalent, and the first prong of the preemption test fails.

18 *See G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904

19 (9th Cir. 1992).

20    As an example, in *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 973 (N.D. Cal.

21 2015), the defendants created applications that copied and disseminated address book

22 information stored in Apple devices. Plaintiffs, who were users affected by these

23 applications, asserted a conversion claim against the application developers. *See id.*

24 The defendants moved to dismiss the claim, arguing that it was preempted by the

25 Copyright Act. *See id.* at 988. This Court denied the motion, finding that the conversion

26 claim was not equivalent to a copyright claim where the conversion claim included acts

27 beyond reproduction. *See id.* at 989. More specifically, the plaintiffs had alleged that the

28 defendants engaged in unauthorized access, misuse, and misappropriation of the data,

none of which was required for a copyright claim. *See id.*

Similarly, in *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 899 (9th Cir. 1992), the plaintiff had obtained an FAA certificate approving an aircraft modification. The plaintiff brought a conversion claim against an aircraft owner who had used a copy of plaintiff's FAA certificate to apply for approval of its own airplane modification. *See id.* at 899–900. The court found that the Copyright Act did not preempt plaintiff's conversion claim because while the defendant was free to make as many copies of the FAA certificate as it wished (and any claim to the contrary would be preempted), the Copyright Act did not preempt claims that arose from the defendant's misuse of the certificate to obtain an airworthiness approval. *See id.* at 904; *see also Salestraq Am., LLC*, 635 F. Supp. 2d at 1185 (state law claims based on allegations that defendants copied residential property database and used it for their own commercial benefit were not preempted by Copyright Act where state claims were qualitatively different from copyright claim); *Merch. Transaction Sys., Inc. v. Nelcela, Inc.*, No. CV 02-1954PHXMHM, 2009 WL 2355807, at *2 (D. Ariz. July 28, 2009) (claim for conversion of computer software was not preempted by Copyright Act where claim included additional element of wrongful taking, *i.e.*, theft of the computer software).

The instant action is analogous to the above-cited cases. PhantomALERT has alleged that Defendants first tried to broker an exchange of the Points of Interest database from PhantomALERT. (Compl. ¶34.)  When that proposal failed, Defendants, without any authorization, copied the entire Points of Interest database. (Compl. ¶35.) Defendants then integrated PhantomALERT's database into their own applications for their own commercial benefit. (Compl. ¶¶37, 52.)  Thus, PhantomALERT's allegations of Defendants' unauthorized access, intent to steal, and subsequent commercial misuse remove PhantomALERT's conversion claim from the scope of copyright preemption.

**2.    Conversion does not require a dispossession of the property at issue.**

Defendants also argue that PhantomALERT's conversion claim is deficient

KRONENBERG | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1    because Defendants did not deprive PhantomALERT of the full possession of its Points

2    of Interest database. Specifically, Defendants argue that the "mere copying of

3    information where the plaintiff still has full possession of that information is not

4    conversion." (Mot. at 11:25–26.)  This statement is incorrect, and it is not supported by

5    Defendants' authority.

6        Under California law, intangible property may be the subject of conversion. *See J*

7    *& J Sports Prods., Inc.*, 913 F. Supp. 2d at 953. Regardless of the nature of the

8    property, a party claiming conversion must allege that the converter assumed control

9    over the property *or* that the converter applied the property to its own use. *See Mohebbi*

10   *v. Khazen*, 50 F. Supp. 3d 1234, 1257 (N.D. Cal. 2014). Thus, a plaintiff does not need

11   to allege dispossession to state a conversion claim, as Defendants argue; rather, a

12   plaintiff may allege that the defendant applied the converted property to its own use.

13       As an example, in *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d

14   1141, 1151 (S.D. Cal. 2014) (incorporating background facts from *Celebrity Chefs Tour,*

15   *LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123 (S.D. Cal. 2014)), a television show's producer

16   claimed that a sponsor converted taped material of a celebrity cooking show and

17   released that footage to public broadcast stations under the sponsor's name. The court

18   found that the plaintiff stated a claim against the sponsor for conversion of the "Tour

19   footage" where the plaintiff alleged that it owned a copyright in the footage and that

20   Macy's had used the footage for its own benefit. *See id.* at 1151–52. The court further

21   held, "[t]hat Macy's may not have ever possessed the physical [tapes] is of no

22   consequence, as it gained possession and claimed ownership of the intellectual

23   property contained therein." *Id.* at 1152; *see also Farmers Ins. Exch. v. Zerin*, 53 Cal.

24   App. 4th 445, 451–52 (1997) ("It is not necessary that there be a manual taking of the

25   property; it is only necessary to show an assumption of control or ownership over the

26   property, or that the alleged converter has applied the property to his own use.").

27       Here, PhantomALERT has alleged that Defendants exploited the Points of

28   Interest database for their own use after copying it without authorization. (Compl. ¶¶37–

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

38, 40–41, 52.)   Thus, PhantomALERT has stated a claim for conversion under California law even if it did not lose full control of its Points of Interest database.

Defendants' authority is inapposite. First, contrary to Defendants' argument, *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) does not contain a three-part test for conversion. Rather, *Kremen* sets forth this three-part test "to determine whether a property right exists." *Id.* at 1030. *Kremen* goes on to state that "[p]roperty is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition.'" *Id.* (quoting *Downing v. Mun. Court*, 88 Cal. App. 2d 345, 350 (1948)). In fact, under California law, property is the right of any person to possess, use, enjoy, and dispose of a thing. *Union Pac. R.R. Co. v. Santa Fe Pac. Pipelines, Inc.*, 231 Cal. App. 4th 134, 157 (2014). Here, PhantomALERT has alleged that it has the right to possess and use its Points of Interest database, and thus it has alleged a property interest in the database.

Defendants' reliance on *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1056 (N.D. Cal. 2014) is also misplaced. The portion of the decision cited by Defendants addresses Article III standing, not dispossession of property, and it states:

> The Court does not read these decisions to be holding that consumers do not have property rights in their electronically stored private information, but that the copying of such information without any meaningful economic injury to consumers is insufficient to establish standing on that basis.

Because PhantomALERT has alleged that it was injured as a result of Defendants' copying of the Points of Interest database (Compl. ¶53), PhantomALERT has stated a claim for conversion. *See* Civ. Code §3336 (defining detriment resulting from conversion to include value of property at the time of conversion, along with interest, and fair compensation for the time and money expended in pursuit of the property).

## C.   Defendants disregard the express allegations of the complaint in arguing that Google is not liable to PhantomALERT.

Defendants argue that the complaint does not allege a viable claim against Google because Google did not acquire Waze's liabilities. (Mot. at 12:10–13:18.)

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

Specifically, Defendants argue: a) Google purchased the shares of Waze's parent corporation (and not the assets and liabilities of Waze), and Waze continues to operate as an independent Delaware corporation; and b) even if Google had purchased Waze's assets, it did not purchase Waze's liabilities. (*Id.*)  Defendants' arguments contradict the express allegations of the complaint.

First, regardless of the structure of Google's acquisition of Waze, the complaint specifically alleges that Google itself engaged in the misconduct. Specifically, the complaint alleges:

> Google incorporated aspects of the Waze application, including information from the PhantomALERT Points of Interest database, into Google's own mapping services. Thereafter, on information and belief, Google reproduced the information from the Points of Interest database, created derivative works from the information, displayed the information, and sold or leased the information to users through an end user license agreement.

(Compl. ¶52.)   As discussed above, both the Points of Interest database and the individual Points of Interest comprise property owned by PhantomALERT, and they are copyrighted works. Thus, PhantomALERT has stated copyright and conversion claims against Google.

Second, PhantomALERT has alleged that "in June 2013, Google acquired all of the assets and liabilities of Waze, and Waze was merged into Google." (Compl. ¶31.) Defendants argue that this allegation is "simply false," and they submit a Delaware certificate of good standing to show that Waze continues to operate as an independent Delaware corporation. (Mot. at 12:13–24.)  However, this certificate merely shows that a corporation named Waze Inc. still exists on the files of the Delaware Secretary of State. The certificate does not establish whether that corporation has any assets or liabilities, whether its former assets or liabilities were sold to Google, or even whether the company merged with Google and failed to file the appropriate "merge out" documents.[2]

---

[2] While beyond the scope of Defendants' motion, PhantomALERT notes that few public records exist describing the structure of Google's acquisition of Waze, but that Google has not identified Waze or Waze Ltd. as a subsidiary in its post-acquisition SEC filings.

1    Finally, Defendants argue that PhantomALERT cannot overcome the general

2    rule of successor liability that when a corporation purchases the assets of another

3    corporation, the purchasing corporation does not assume the liabilities of the selling

4    corporation. (Mot. at 12:25–28.)  However, this rule does not apply to mergers, and the

5    complaint alleges that Waze was merged into Google. *See Maudlin v. Pac. Decision*

6    *Sciences Corp.*, 137 Cal. App. 4th 1001, 1016 (2006) (surviving company in merger is

7    subject to all of the debts and liabilities of the disappearing corporation in the same

8    manner as if the surviving corporation had itself incurred them). Moreover, even with an

9    asset purchase, the purchaser takes on the liabilities of the seller when the transaction

10    amounts to a consolidation or merger of the two corporations. *See Franklin v. USX*

11    *Corp.*, 87 Cal. App. 4th 615, 621 (2001). Here, the complaint specifically alleges that

12    Waze was merged into Google, thereby triggering this exception to the general rule of

13    successor liability.

14    In summary, PhantomALERT has stated claims against Google where it has

15    alleged that Google itself engaged in the misconduct, and where it has alleged that

16    Google acquired Waze's liabilities.

17    //

18    //

19    //

20

21    PhantomALERT also notes that Google is the current registrant of the WAZE
22    trademark, Google is the current registrant of the <waze.com> domain name, and Waze
      Ltd. assigned its patent for its mapping system to Google. *See*

23    • http://whois.icann.org/en/lookup?name=waze.com;

24    • http://assignments.uspto.gov/assignments/q?db=tm&qt=sno&reel=&frame=&sno
        =79116560;
25
      • https://www.google.com.ar/patents/US8958979;
26
      • http://www.sec.gov/Archives/edgar/data/1288776/000128877615000008/goog20
27        141231exhibit2101.htm.

28    Thus, significant evidentiary questions exist about the structure of Google's acquisition
      of Waze.

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1

**CONCLUSION**

2    For all of the reasons set forth above, the Court should deny Defendants' motion

3  to dismiss in its entirety.

4

5  Respectfully Submitted,

6  Dated: November 9, 2015            **KRONENBERGER ROSENFELD, LLP**

7

8                                     By:  __s/ Karl S. Kronenberger__
                                          Karl S. Kronenberger

9

10                                    Attorneys for Plaintiff PhantomALERT, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108