UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHANTOMALERT, INC., | Case No. 15-cv-03986-JCS |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART MOTION TO DISMISS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| GOOGLE INC., et al., | |
| Defendants. | Re: Dkt. No. 19 |

## I.    INTRODUCTION

Plaintiff PhantomALERT, Inc. ("PhantomALERT") has created navigation applications for mobile telephones and GPS devices and maintains a proprietary database ("the Points of Interest database") that is used with these applications (the "Apps").  PhantomALERT alleges that Defendants Google Inc. ("Google") and Waze, Inc. ("Waze") copied the Points of Interest database and are using it for their own benefit.  Based on these allegations, Plaintiff asserts copyright infringement and conversion claims against Google and Waze.  Defendants bring a Motion to Dismiss ("the Motion") seeking dismissal of all of Plaintiff's claims.  A hearing on the Motion was held on December 4, 2015 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part.[1]

## II.    BACKGROUND

### A.    The Complaint

PhantomALERT is a Delaware corporation with its primary place of business in the District of Columbia.  Compl. ¶ 13.  According to Plaintiff, both Google and Waze are Delaware

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

1  corporations with their primary offices in Mountain View, California.  *Id.* ¶¶ 14-15.

2        Plaintiff alleges that it "has created Global Positioning System ('GPS')-based navigation

3  applications for mobile phones and GPS devices" that "notify users of the location of traffic

4  conditions, road hazards, and traffic enforcement monitors, such as speed cameras (collectively,

5  the 'Points of Interest')."  *Id.*  ¶¶ 1-2.  It licenses these Apps to end-users and to GPS device

6  manufacturers.  *Id.* ¶ 2.  PhantomALERT alleges that "[o]ver the last seven years, [it] has engaged

7  in a systematic process of identifying the Points of Interest for its Apps, evaluating which Points

8  of Interest would be of importance to users of the Apps, vetting the accuracy of the Points of

9  Interest, organizing the Points of Interest, and refining the data associated with the Points of

10  Interest."  *Id.* ¶ 3.  According to PhantomALERT, it created and maintains a proprietary database

11  of these Points of Interest (the "Database" or the "Points of Interest database"), which can be

12  accessed in real time by its Apps and displayed on a GPS-generated electronic map.  *Id.* ¶ 4.

13  PhantomALERT applied for a registration with the United States Copyright Office and on August

14  20, 2015, the U.S. Copyright Office issued a copyright registration, No. TXu001954208, covering

15  its App source code and its Points of Interest database as a compilation.  *Id.* ¶¶ 5, 26.

16        PhantomALERT alleges that it began developing its Apps in 2008.  *Id.* ¶ 17.   It alleges

17  that it "uses a systematic process for selecting, coordinating, and arranging information about the

18  Points of Interest," whereby it first allows users to "submit potential Points of Interest to

19  PhantomALERT through the Apps" and then "evaluates whether a Point of Interest submitted by a

20  user is a genuine Point of Interest based on a proprietary formula as well as human judgment."  *Id.*

21  ¶¶ 19-21.  If PhantomALERT decides that a Point of Interest should be included in the Database, it

22  then "refines the geographic and other data associated with the Point of Interest so that the Point of

23  Interest is displayed in the most helpful location on users' GPS-generated maps, with the optimal

24  amount of advance warning to the user."  *Id.* ¶ 22.  Finally, "PhantomALERT reviews the timing

25  of the various users' reports for a particular Point of Interest to ensure that the Point of Interest

26  remains relevant."  *Id.* ¶ 23.  Thus, for example, a speed trap may be removed from the database if

27  there have been no recent reports of the trap.  *Id.*

28        PhantomALERT alleges that Defendant Waze is a wholly owned subsidiary of Waze

United States District Court
Northern District of California

1    Mobile Ltd., an Israeli Company formed in 2007.  *Id*. ¶ 27.  According to Plaintiff, Waze

2    competed with PhantomALERT by operating a GPS-based application that "provides route

3    information and traffic details, including accidents, congestion, and speed and police traps" until

4    June 2013, when "Google acquired all of the assets and liabilities of Waze, and Waze was merged

5    into Google."  *Id*. ¶¶ 28, 31.  PhantomALERT alleges that Google has operated the Waze app

6    since it acquired Waze.  *Id*. ¶ 32.

7           According to Plaintiff, on July 30, 2010, the CEO of Waze sent the CEO of

8    PhantomALERT an email proposing that the two companies cooperate in the operation of their

9    respective GPS-mapping companies.  *Id*. ¶ 33.  In a telephone conversation the same day, Waze's

10   CEO proposed that the companies exchange their respective Points of Interest databases, but

11   PhantomALERT's CEO declined the offer because "Waze did not appear to have substantial data

12   to share."  *Id*. ¶ 34.  Plaintiff alleges, on information and belief, that in late 2012 "Waze copied the

13   PhantomALERT Points of Interest database in its entirety . . . without any authorization or

14   consent."  *Id*. ¶ 45.  Plaintiff further alleges, on information and belief, that "Waze copied the

15   PhantomALERT Points of Interest database on multiple, additional occasions as the database was

16   updated, starting in or around late 2012."  *Id*. ¶ 36.  PhantomALERT alleges that the data was

17   incorporated in modified form into Waze's database and could be viewed by users of the Waze

18   application.  *Id*. ¶¶ 37-38.  According to PhantomALERT, it "determined that Waze had copied its

19   Points of Interest database by observing the presence of fictitious Points of Interest in the Waze

20   application, which PhantomALERT had seeded into its own database for the purpose of detecting

21   copying."  *Id*. ¶ 39.  PhantomALERT alleges that Defendants have "wrongfully profited from their

22   copying and use of the PhantomALERT Points of Interest database, and PhantomALERT has been

23   harmed."  *Id*. ¶ 8.

24          Plaintiff asserts claims for copyright infringement and conversion against Waze and

25   Google.  In the Copyright cause of action, Plaintiff alleges that its Points of Interest database is an

26   "original, creative work" and that it is protected as a compilation under a valid copyright

27   registration, No. TXu001954208.  *Id*. ¶¶ 44-45.  Plaintiff alleges, on information and belief, that

28   Defendants copied and reproduced the Database without its consent and "prepared derivative

United States District Court
Northern District of California

works" of the Database. *Id.* ¶¶ 46-47. According to Plaintiff, the Database, or "derivative works thereof," were publicly displayed by Defendants starting in late 2012 and continuing past June 2013. *Id.* ¶¶ 49-50. According to PhantomALERT, "in June 2013, Google acquired all of Waze's liabilities, including all liability associated with Waze's copyright infringement." *Id.* ¶ 51. In addition, Plaintiff alleges on information and belief that "following Google's acquisition of Waze, Google incorporated aspects of the Waze application, including information from the PhantomALERT Points of Interest database, into Google's own mapping services" and that it "reproduced the information from the Points of Interest database, created derivative works from the information, displayed the information, and sold or leased the information to users through an end user license agreement." *Id.* ¶ 52.

In the conversion cause of action, PhantomALERT alleges that it owns the Database, that Waze copied the Database and "incorporated the data into the Waze application, thereby disposing of PhantomALERT's property in a manner inconsistent with PhantomALERT's possession of that property" and that "Google acquired all of Waze's liabilities, including all liability associated with Waze's wrongful conversion of the PhantomALERT database." *Id.* ¶¶ 55-57.

In the Prayer, Plaintiff asks the Court to award compensatory damages for its own lost profits and Defendants' wrongful profits, "including through the calculation of a reasonable royalty" under the Copyright Act and to enjoin Defendants' operation of the Waze website and app. *Id.* at 8.

### B.   Contentions of the Parties

In the Motion, Defendants assert that Plaintiff's claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because: 1) neither the information contained in the Points of Interest database nor the Database as a whole is protectable under copyright law and in any event, the claim is insufficiently pled; 2) the conversion claim is preempted by federal copyright law and Plaintiff has not alleged the required element of dispossession; and 3) both claims fail as to Google because facts subject to judicial notice establish that Google is merely an acquiring shareholder of Waze and therefore is not liable for the past acts of Waze;  moreover, allegations that Google used data it obtained from the Waze database in its own application are

4

United States District Court
Northern District of California

1    insufficient because Plaintiff does not allege Google had access to or copied Plaintiff's Database

2    and the data are unprotectable facts.  Motion at 1-3.

3            Defendants contend the copyright claim fails because Plaintiff alleges that Defendants

4    copied only facts, which are not subject to copyright protection.  *Id*. at 5-6 (citing *Feist Publ'ns,*

5    *Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991)).   Even if the "facts" are false, Defendants

6    argue, they are afforded no copyright protection.  *Id*. at 6 (citing *BanxCorp v. Costco Wholesale*

7    *Corp*., 978 F. Supp. 2d 280, 304 (S.D.N.Y. 2013);  *Nester's Map & Guide Corp. v. Hagstrom Map*

8    *Co*., 796 F. Supp. 729, 733 (E.D.N.Y. 1992);  *Alexandria Drafting Co. v. Amsterdam*, No. CIV. A.

9    95-1987, 1997 WL 325769, at *8 (E.D. Pa. June 4, 1997); RAYMOND T. NIMMER, 1 INFORMATION

10   LAW § 3:24 (2015); WILLIAM F. PATRY, 2 PATRY ON COPYRIGHT § 3:117 (2015)).  Further,

11   Defendants argue that Plaintiff only alleges that some of the Points of Interest from its Database

12   appeared on the Waze app;  aside from conclusory allegations, Plaintiff  does not allege that

13   Defendants copied the Database's "particular selection or arrangement."  *Id*. at 6.   These Points of

14   Interest are purely factual and do not constitute original material, Defendants contend.  *Id*. at 6-7

15   (citing *Streetwise Maps, Inc. v. VanDam, Inc*., 159 F.3d 739, 747-48 (2d Cir. 1998); *Assessment*

16   *Technologies of WI, LLC v. WIREdata, Inc*., 350 F.3d 640, 646 (7th Cir. 2003)).

17           Defendants argue further that even if Plaintiff alleged that Defendants copied the particular

18   selection and arrangement of facts in the Database, the copyright claim fails because the Database

19   was compiled based on purely functional considerations and therefore, the process used to create

20   the database is not expressive.  *Id.* at 8-9 (citing *Baker v. Selden*, 101 U.S. 99-100 (1879);

21   *Bikram's Yoga College v. Evolation Yoga*, 803 F.3d 1032 (9th Cir. Oct. 8, 2015)).

22           Finally, Defendants contend the copyright claim is inadequately pled because Plaintiff

23   failed to allege any specific facts showing that Defendants had access to the Database.  *Id*. at 9-10

24   (citing *Rice v. Fox Broad. Co*., 330 F.3d 1170, 1174 (9th Cir. 2003); *Richtek Tech. Corp. v. UPI*

25   *Semiconductor Corp*., No. C 09-05659 WHA, 2011 WL 166198, at *3 (N.D. Cal. Jan. 18, 2011)).

26           Defendants argue that the conversion claim should be dismissed because it is preempted by

27   federal law, asserting that "[w]hen the claim for conversion is nothing more than unauthorized

28   reproduction of an intangible work, as opposed to actually taking another's physical property for

oneself, the Copyright Act preempts the claim." *Id*. at 10-11 (citing *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001)). Defendants further assert the conversion claim fails because Plaintiff has not alleged deprivation of ownership of the Database, a required element of conversion. *Id*. at 11 (citing *Kremen v. Cohen*, 337 F.3d 1024, 1030-31 (9th Cir. 2003); *Cardonet, Inc. v. IBM Corp*., No.C-06-06637 RMW, 2008 WL 941707 (N.D. Cal. Apr. 7, 2008)). In particular, Defendants contend, Plaintiff has alleged "mere copying of information where the plaintiff still has full possession of that information . . . ." *Id*. (citing *FMC Corp. v. Capital Cities/ABCInc*., 915 F.2d 300, 303-04 (7th Cir. 1990); *Opperman v. Path, Inc*., 87 F. Supp. 3d 1018, 1056 n.22 (N.D. Cal. 2014)).

Defendants also challenge the assertion of both the copyright claim and the conversion claim against Google to the extent they are based on Google's alleged acquisition of Waze's liabilities. *Id*. at 12-13. First, they assert, Plaintiff seeks to impose liability on Google based on its alleged acquisition of Waze in an asset purchase in 2013, but facts subject to judicial notice show that this allegation is false and that Google is actually an acquiring shareholder. *Id*. at 12. In particular, Defendants offer a copy of a certificate, dated October 5, 2015, from the Delaware Secretary of State that Waze, Inc. is a Delaware corporation and is in good standing. Maitra Decl., Ex. 1.[2] In addition, they have filed their Corporate Disclosure Statement under Rule 7.1 of the Federal Rules of Civil Procedure, in which Defendants' counsel states that "Waze Inc. is a wholly owned subsidiary of Google Inc." Docket No. 20. According to Defendants, an acquiring shareholder cannot be held liable for the past, present, or future acts of the corporation. *Id*. (citing *U.S. v. Bestfoods*, 524 U.S. 51, 61-62 (1998)). Even if Google had acquired all of Waze's assets, Defendants contend, it would not be liable for Waze's past conduct. *Id*. at 12-13 (citing *Maine State Ret. Sys. v. Countrywide Fin. Corp*., No. 2:10-CV-0302 MRP, 2011 WL 1765509, at *5 (C.D. Cal. Apr. 20, 2011); *Winner Chevrolet, Inc. v. Universal Underwriters Ins. Co*., No. CIVS-08539 LKK/JFM, 2008 WL 2693741, at *1 (E.D. Cal. July 1, 2008); *Pantoja v. Countrywide Home Loans, Inc*., 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009)). Finally, Defendants assert,

---

[2] Although Defendants assert that "facts subject to judicial notice" show that Google was an acquiring shareholder, they have not actually filed a request for judicial notice.

United States District Court
Northern District of California

1

2

3

Plaintiff does not allege that Google ever had access to or copied its Database, and the inclusion of specific pieces of information in Google's mapping apps cannot give rise to a copyright claim for the reasons discussed above. *Id*. at 13.

PhantomALERT contends its claims are sufficient under Rule 12(b)(6). It argues that the copyright claim is sufficient at the pleading stage because: 1) the Points of Interest database as a whole reflects sufficient creativity to render it protectable under copyright law; 2) the specific points within the Database are protectable because they are not facts, but rather, opinions of PhantomALERT as to what information will be useful to readers; and 3) PhantomALERT is not required to allege that Defendants had access to its database but only that they copied the Database, which Plaintiff alleged in its complaint. Opposition at 2.

PhantomALERT argues that its conversion claim is adequately alleged because it includes additional elements that are not required for a copyright claim - namely, allegations that Defendants copied the Database without authorization and with the intent to steal the Database for their own commercial gain - and therefore, it is not preempted by federal copyright law. In addition, PhantomALERT contends, Defendants' assertion that a dispossession of property is required to state a claim for conversion is incorrect. *Id*.

PhantomALERT rejects Defendants' argument that its claims are insufficiently alleged as to Google, arguing that it is sufficient to allege that Google engaged in the misconduct and that Google and Waze merged and that Google assumed Waze's liabilities. *Id*.

In support of its assertion that the Points of Interest database is protectable as a compilation under *Feist*, Plaintiff points to cases both within the Ninth Circuit and from other jurisdictions it contends show that the requisite level of creativity is "extremely low" and is met under the facts alleged here. *Id*. at 5-9 (citing *CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999); *Craigslist Inc. v. 3Taps Inc*., 942 F. Supp. 2d 962 (N.D. Cal. 2013); *Honeywell Int'l, Inc. v. W. Support Grp., Inc*., 947 F. Supp. 2d 1077 (D. Ariz. 2013); *Salestraq Am., LLC v. Zyskowski*, 635 F. Supp. 2d 1178 (D. Nev. 2009); *City of New York v. Geodata Plus, LLC*, 537 F. Supp. 2d 443 (E.D.N.Y. 2007); *Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984); *BUC Int'l Corp. v. Int'l Yacht Council Ltd*., 489 F.3d 1129, 1145 (11th Cir. 2007); *Mason v. Montgomery Data, Inc*., 967

7

1    F.2d 135, 141–42 (5th Cir. 1992);  *Cnty. of Suffolk, New York v. First Am. Real Estate Solutions*, 261

2    F.3d 179, 187–88 (2d Cir. 2001);  *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888

3    F. Supp. 2d 691, 710 (D. Md.) aff'd, 722 F.3d 591 (4th Cir. 2013)).

4        PhantomALERT argues that Defendants' reliance on *Bikram's Yoga* in support of the assertion

5    that the creation of the Database is a process based on functional considerations rather than expression

6    misses the mark.  *Id*. at 9-11.  According to Plaintiff, to the extent the court in *Bikram's Yoga* found

7    that the sequence of yoga positions (asanas) in that case was a process that was not protectable, the

8    facts here are distinguishable because PhantomALERT does not allege that the process for selecting

9    and arranging its Points of Interest is copyrightable.  *Id.* (citing 2015 WL 5845415 at *3).  Plaintiff

10   further points to the court's holding in *Bikram's Yoga* that the book that described the yoga positions

11   *was* protectable.  *Id*.  According to Plaintiff that holding is consistent with the established principal

12   that while an idea, process or procedure is not protectable, the *expression* of the idea, process or

13   procedure in a tangible medium is protectable so long as it is minimally creative.  *Id*. (citing *Bikram's*

14   *Yoga*, 2015 WL 5845415 at *3;  *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 741

15   (9th Cir. 1971);  *Baker v. Selden*, 101 U.S. 99, 101–02 (1879);  *L.A. Printex Indus., Inc. v. Aeropostale,*

16   *Inc.*, 676 F.3d 841 (9th Cir. 2012);  *McIntosh v. N. California Universal Enterprises Co*., 670 F. Supp.

17   2d 1069, 1096 (E.D. Cal. 2009)).   PhantomALERT contends its Points of Interest database is such an

18   expression and therefore is copyrightable.  *Id*.

19       PhantomALERT further asserts that the individual Points of Interest are copyrightable because

20   it uses its "expertise and judgment" to decide which potential Points of Interest should be included and

21   where they should be placed on the GPS-generated maps so as to provide users with maximum notice

22   while "still preserving the immediacy of the notification."  *Id*. (citing *CDN Inc. v. Kapes*, 197 F.3d

23   1256, 1257-60 (9th Cir. 1999) and quoting Compl. ¶ 22).   Plaintiff argues that *Assessment*

24   *Technologies of WI, LLC v. WIREdata, Inc.*, cited by Defendants for the proposition that individual

25   facts cannot be copyrighted, is distinguishable because that case involved undisputed facts that were

26   provided by a third party whereas here, "each of PhantomALERT's Points of Interest reflects a set of

27   data created and modified by PhantomALERT in its judgment and expertise."  *Id*. at 12 (citing 350

28   F.3d 640, 642 (7th Cir. 2003)).

8

1        PhantomALERT rejects Defendants' assertion that the copyright claim fails because Plaintiff

2   has not alleged Defendants had access to the Points of Interest database.  *Id*. at 12-13.  According to

3   Plaintiff, the elements of a copyright claim are ownership of the copyright and copying of the

4   constituent elements of the work;  while copying may be established by showing that the allegedly

5   infringing work  is substantially similar  in its protected elements and that the infringing party had

6   access to the work, PhantomALERT contends that "proof of access is just one way to establish

7   unlawful copying, and the amount of access that needs to be proved depends on the similarity of the

8   infringing work."  *Id*.  Because Plaintiff has expressly alleged that Waze copied the Points of Interest

9   database in its entirety, it asserts, the copyright claim is adequately alleged.  *Id*.  (citing Compl. ¶¶ 35,

10  41).

11       PhantomALERT argues that its conversion claim is not preempted and is sufficiently pled.  *Id*.

12  at 13-17.  According to Plaintiff, state law claims are preempted by the Copyright Act only when the

13  rights asserted under state law are equivalent to those protected by the Copyright Act *and* the work

14  involved falls within the "subject matter" of the Copyright Act.  *Id*. at 14 (citing *Kodadek v. MTV*

15  *Networks, Inc*., 152 F.3d 1209, 1212 (9th Cir. 1998).  Where the state law claim involves an additional

16  element, Plaintiff contends, the rights are not equivalent and there is no preemption.  *Id*. at 14-15

17  (citing *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Serv., Inc*., 958 F.2d 896, 904 (9th Cir.

18  1992); *Opperman v. Path, Inc*., 84 F. Supp. 3d 962, 973 (N.D. Cal. 2015)).  PhantomALERT argues

19  that the rights are not equivalent here because of its "allegations of Defendants' unauthorized access,

20  intent to steal, and subsequent commercial misuse." *Id*. at 15.   Further, Plaintiff argues that intangible

21  property may be the subject of a conversion claim and that dispossession need not be alleged to state a

22  claim.  *Id.* at 15-17 (citing *J & J Sports Prods., Inc. v. Flores*, 913 F. Supp. 2d 950, 953 (E.D. Cal.

23  2012); *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1257 (N.D. Cal. 2014);  *Celebrity Chefs Tour, LLC v.*

24  *Macy's, Inc*., 16 F. Supp. 3d 1141, 1151 (S.D. Cal. 2014);  *Farmers Ins. Exch. v. Zerin*, 53 Cal. App.

25  4th 445, 451–52 (1997)).

26       Finally, PhantomALERT argues that its express allegation that Google merged with Waze, as

27  well as allegations that Google itself was engaged in misconduct, are sufficient to state claims against

28  Google.  *Id*. at 17-19.

United States District Court
Northern District of California

9

1    III.    **ANALYSIS**

2         A.    **Legal Standard Under Rule 12(b)(6)**

3         A complaint may be dismissed for failure to state a claim on which relief can be granted

4    under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The

5    purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

6    complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a

7    plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil

8    Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short

9    and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

10   8(a).

11        In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

12   takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

13   non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

14   Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that

15   would support a valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

16   1990).  A plaintiff need not plead a prima facie case in order to survive a motion to dismiss

17   pursuant to Rule 12(b)(6).  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002); *see also*

18   *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (reaffirming the holding of *Swierkiewicz* in light of

19   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  A

20   complaint must however "contain either direct or inferential allegations respecting all the material

21   elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at

22   562 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

23        "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

24   of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

25   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

26   enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on

27   its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court

28   to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

United States District Court
Northern District of California

10

1    (quoting *Twombly*, 550 U.S. at 570).

2
        **B.    Copyright Claim**
3
            **1.   Legal Background: Protection of Facts and Compilations under the**
4                 **Copyright Act**

5        "To establish infringement, two elements must be proven:  (1) ownership of a valid

6    copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns,*

7    *Inc. v. Rural Tel. Ser. Co.*, 499 U.S. 340, 345 (1991) (citation omitted).  A work is original, under

8    copyright law, so long as it "was independently created by the author (as opposed to copied from

9    other works), and . . . it possesses at least some minimal degree of creativity."  *Id*. at 345 (citation

10   omitted).  The amount of creativity required is "extremely low" and does not even require novelty,

11   so long as the similarity to another work is fortuitous and is not the result of copying.  *Id*. The

12   originality requirement is rooted in the Constitution, which "authorizes Congress to 'secur[e] for

13   limited Times to Authors . . . the exclusive Right to their respective Writings.'"  *Id*. at 346

14   (quoting U.S. Const. art. I, § 8, cl. 8).

15       Because facts "do not owe their origin to an act of authorship" they are "not 'original' in

16   the constitutional sense."  *Id*. at 347-48.   Rather, they are merely "discovered" and "record[ed]."

17   *Id*. at 347.  Therefore, facts - whether "scientific, historical, biographical, [or] news of the day" -

18   may not be copyrighted.  *Id*.  Similarly, ideas may not be copyrighted, because "the primary

19   objective of copyright is not to reward the labor of authors, but to '[p]romote the Progress of

20   Science and the Useful Arts.'"  *Id*. at 349 (quoting U.S. Const. art. I, § 8, cl. 8).  Thus, while

21   "copyright assures authors the right to their original expression, . . . [it] encourages others to build

22   freely upon the ideas and information conveyed by the work."  *Id*. (citing *Harper & Row*

23   *Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985)).  This dichotomy is referred to

24   as the "idea/expression or fact/expression dichotomy."  *Id*. at 350.

25       While facts alone may not be copyrighted, a factual compilation "may possess the requisite

26   originality" for copyright protection where the author of the compilation has exercised "a minimal

27   degree of creativity" as to "selection and arrangement" of the facts contained in a compilation.  *Id*.

28   at 348 (citations omitted).   The copyright protection afforded a factual compilation is "thin,"

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  however, because the facts contained in the compilation are not protected.  *Id*. at 349.

2  Consequently, the "copyright is limited to the particular selection or arrangement" of facts and "a

3  subsequent compiler remains free to use the facts contained in another's publication to aid in

4  preparing a competing work." *Id*. at 349.  Further, "[n]ot every selection, coordination, or

5  arrangement will pass muster"; rather, the "selection, coordination, and arrangement" of the facts

6  in a compilation must be "sufficiently original to trigger copyright protection." *Id*. at 358. Thus,

7  the Court in *Feist* observes, "[t]here remains a narrow category of works in which the creative

8  spark is so trivial as to be virtually nonexistent" and those compilations "are incapable of

9  sustaining a valid copyright." *Id*. at 359 (citation omitted).

10      These principles are embodied in the Copyright Act of 1976, which revised the Copyright

11  Act of 1909 to:

12      explain with painstaking clarity that copyright requires originality, §
        102(a); that facts are never original, § 102(b); that the copyright in a
13      compilation does not extend to the facts it contains, § 103(b); and
        that a compilation is copyrightable only to the extent that it features
14      an original selection, coordination, or arrangement, § 101.

15  *Id*. at 360.  Section 102(a) "sets forth the proper subjects of copyright protection." *Bikram's Yoga*,

16  803 F.3d at 1036 (9th Cir. 2015). Section 102(b), "codifies the 'idea/expression dichotomy,'"

17  excluding from protection "any idea, procedure, process, system, method of operation, concept,

18  principle, or discovery, regardless of the form in which it is described, explained, illustrated, or

19  embodied in such work." *Id*. at 1037 (quoting 29 U.S.C. § 102(b)).   Section 103 allows for a

20  copyright in a "compilation or derivative work" but makes clear that "[t]he copyright in a

21  compilation or derivative work extends only to the material contributed by the author of such

22  work, as distinguished from the preexisting material employed in the work, and does not imply

23  any exclusive right in the preexisting material." 29 U.S.C. §§  103(a) & (b).  Section 101 defines

24  "compilation" as "a work formed by the collection and assembling of preexisting materials or of

25  data that are selected, coordinated, or arranged in such a way that the resulting work as a whole

26  constitutes an original work of authorship." 29 U.S.C. § 101.

27      **2.  *Feist*  and *Bikram's Yoga***

28      *Feist* and *Bikram's Yoga* illustrate the principles discussed above.  Because both Plaintiff

12

and Defendants contend these decisions support their positions, the Court summarizes here the basic facts and holdings of these cases.

*Feist* involved the assertion of copyright claims by a public telephone utility ("Rural") against the publisher of an area-wide telephone directory ("Feist") based on the undisputed fact that Feist had copied listings from Rural's "white pages" and included them in its own directory after Rural refused to license its listings to Feist. 499 U.S. at 343-44.   As a result of the copying, over a thousand of Feist's listings out of a total of almost 47,000 listings were identical to listings in Rural's white pages. *Id*. at 344. As in this case, Rural had "seeded" its own directory with some fictitious listings, and four of those were included in Feist's directory as well. *Id*.  The district court relied on a "string of lower court cases" in which telephone directories were found to be copyrightable to rule in Rural's favor and the Court of Appeals affirmed.  The Supreme Court reversed.  The Court found that the lower courts that had afforded copyright protection to telephone directories had incorrectly relied on the "sweat of the brow" that went into compiling the directories while "eschew[ing] the most fundamental axiom of copyright law - that no one may copyright facts or ideas." *Id*. at 344, 353.

The Court in *Feist* went on to address whether either the "raw data" or Rural's arrangement and coordination of the data into a compilation reflected sufficient originality to render them copyrightable and found that they did not. *Id*. at 361-363.  In particular, the Court found that Rural merely discovered and reported the names, addresses and telephone numbers that were copied and therefore, that there was nothing original in that data. *Id*. at 361.  As to the coordination and arrangement of the data in Rural's directory, the Court found that there was "nothing remotely creative about arranging names alphabetically in a white pages directory" and that such an arrangement was "an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course." *Id*. at 363. The Court concluded, "[i]t is not only unoriginal, it is practically inevitable." *Id*.  Consequently, the Court concluded that Feist's copying of data from Rural's white pages did not constitute infringement. *Id*. at 364.

In *Bikram's Yoga*, the Ninth Circuit addressed whether a sequence of twenty-six yoga poses and two breathing exercises developed by Bikram Choudhury ("the Sequence") and

13

1    described in his book were entitled to copyright protection.  803 F.3d at 1034.   Plaintiff Bikram's

2    Yoga College of India, L.P. ("Bikram's Yoga") sued defendant Evolation Yoga, LLC

3    ("Evolation") and two individuals for copyright infringement based on their use of the Sequence

4    in their yoga classes.  *Id*. at 1036.   The court held that the Sequence of poses was an "idea,

5    process or system designed to improve health" and therefore, was unprotectable under copyright

6    law even though the *expression* of the idea was protected.  *Id*.  Because copyright protection of the

7    Sequence would run afoul of the idea/expression dichotomy of § 102(b), the court held, the

8    Sequence also was not protectable as a compilation.  *Id*.

9            In its analysis, the court began by recognizing that the "idea/expression dichotomy

10   'strike[s] a definitional  balance between the First Amendment and the Copyright Act by

11   permitting free communication of facts while still protecting an author's expression.'"  *Id*. at 1037

12   (quoting *Harper & Row Publishers v. Nation Enters*., 471 U.S. 539, 556 (1985)).  This balance is

13   reflected in *Baker v. Seldin*, 101 U.S. 99 (1879), in which the Supreme Court held that a book that

14   explained a system of book-keeping was entitled to copyright protection but the system of book-

15   keeping itself was not protectable, "thus recognizing the vital distinction between  ideas and

16   expression." *Id*.  Based on this distinction, the court said, "courts have routinely held that the

17   copyright for a work describing how to perform a process does not extend to the process itself."

18   *Id*. at 1037-38 (citing *Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002) (holding that that

19   meditation exercises described in a copyrighted manual were not themselves protectable because

20   they described a process for achieving enhanced consciousness); *Publications International, Ltd.*

21   *v. Meredith Corp*., 88 F.3d 473 (7th Cir.1996) (holding that recipes in a copyrighted cookbook

22   were not protectable because they described  procedures for making food); *Seltzer v. Sunbrock*, 22

23   F.Supp. 621 (S.D.Cal. 1938) (holding that copyright in a manual describing how to run roller-

24   skating races did not extend to rules of rollerskating described in the manual)).  Similarly, the

25   Ninth Circuit reasoned, the copyright protection for Bikram Choudhury's book does not extend to

26   the Sequence itself because it is "a system designed to yield physical benefits and a sense of well-

27   being" and therefore is unprotectable under § 102(b).

28           The court goes on to address whether the Sequence is entitled to copyright protection as a

United States District Court
Northern District of California

14

compilation.  *Id*. at 1041.  Looking to *Feist*, the court found that even though a compilation may be a proper subject of copyright, "[t]he availability of copyright protection for compilations . . . does not eliminate Section 102's categorical bar on copyright protection for ideas."  *Id*. (citing 499 U.S. at 350-51).   Thus, the fact that the Sequence contains "many constituent parts does not transform it into a proper subject of copyright protection."  *Id*.  Further, the court reasoned, "the medical and functional considerations at the heart of the Sequence compel the very selection and arrangement of poses and breathing exercises for which [the plaintiff] claim[ed] copyright protection."  *Id*. at 1042. In other words, the court held, "the overarching reason for the organization of the poses and breathing exercises in the Sequence is to further the basic goals of the method."  *Id*.   The court concluded, "[t]he Sequence's composition renders it more effective as a process or system, but not any more suitable for copyright protection as an original work of authorship."  *Id*.

### 3.  Whether PhantomALERT has Sufficiently Alleged a Protectable Interest in the Specific Points of Interest

PhantomALERT contends the individual facts in its Points of Interest Database are protectable because "each Point of Interest reflects data that PhantomALERT has selected and modified to provide users with PhantomALERT's 'best guess' as to the most valuable and useful traffic information.'"  Opposition at 12. In addition, PhantomALERT argues that it uses its "expertise and judgment in deciding where to place a speed camera on its GPS-generated maps."  *Id*.  The Court finds PhantomALERT's arguments unpersuasive.

It is apparent from the allegations in the Complaint that Plaintiff's Points of Interest are inherently factual, involving "traffic conditions, speed restrictions, and police-monitors," that is, objective facts that can be discovered and reported.  Compl. ¶ 17.  The Supreme Court has made clear that facts are not copyrightable, though the creativity associated with the selection and arrangement of those facts in a compilation may be protectable (as discussed below).  *See Feist*, 499 U.S. at 347-48.   This rule applies even when the "facts" are inaccurate, as was the case in *Feist*, where the defendant had copied a handful of false listings that were "seeded" in the plaintiff's directory.   *Id*. at 344.  As one court explained, this is because "very often, data fails to

1    be perfectly representative or entirely complete relative to what it is supposed to measure, but the

2    data nevertheless remains fundamentally factual." *BanxCorp v. Costco Wholesale Corp.*, 978 F.

3    Supp. 2d 280, 304 (S.D.N.Y. 2013) (citing *Feist*, 499 U.S. at 344)).   PhantomALERT's assertion

4    that each *individual* point of interest is protectable, even though it is factual in nature, merely

5    because it was selected for inclusion in its Database flies in the face of this established rule.

6        Plaintiff's assertion that it exercises judgment as to *where* on the GPS-generated map the

7    Points of Interest are displayed is also unpersuasive.   First, the placement of the Points of Interest

8    on the map is dictated by functional purpose of the apps, namely, the need to give drivers

9    sufficient advance warning as they approaching the Point of Interest;   Plaintiff has not alleged any

10   facts suggesting that this determination involves any more creativity than listing names and

11   telephone numbers in alphabetical order, as in *Feist*.   Second, even assuming these determinations

12   regarding the placement of the Points of Interest on the map involve sufficient judgment to meet

13   the creativity requirement, there is no allegation that Defendants have copied this placement of the

14   Points of Interest on their own GPS-generated maps such that the timing of the notifications are

15   the same in Defendants' apps as they are in Plaintiff's.

16        PhantomALERT's reliance on *CDN v. Kapes*, 197 F.3d 1256 (9th Cir. 1999) for the

17   assertion that the individual Points of Interest are not facts is unconvincing.   In *CDN*, the Ninth

18   Circuit held that the individual prices listed in a wholesale price guide for collectible coins met the

19   originality requirement because they were not "mere listings of actual prices paid" for the coins,

20   which would not have been copyrightable, but instead, were the defendant's "best estimate of the

21   fair value" of the coins, based on an analytical process that itself involved creativity.   197 F.3d at

22   1260.   In other words, the prices in *Kapes* were not facts at all but opinions that reflected

23   creativity.   In contrast, the Points of Interest in PhantomALERT's Database are inherently factual,

24   as discussed above.   Accordingly, the Court finds that the individual Points of Interest in

25   Plaintiff's database are not protectable.

26

27

28

United States District Court
Northern District of California

16

### 4. Whether PhantomALERT has Sufficiently Alleged a Protectable Interest in the Points of Interest Database as a Whole

Plaintiff also asserts that its Points of Interest database as a whole is copyrightable as a compilation.  To establish that the Database is protectable, Plaintiff must allege some facts showing that the Points of Interest "are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  *See* 29 U.S.C. § 101.  Even if Plaintiff can allege facts showing such originality, the copyright protection to which the Database is entitled does not extend beyond the expressive elements and does not cover ideas, systems or processes.  The Court concludes that while Plaintiff's allegations may be sufficient to support an inference that the Points of Interest database as whole is an original work of authorship it has not alleged a protectable interest that extends to Defendants' alleged copying.

As a preliminary matter, the Court rejects Defendants' argument that under *Bikram's Yoga* the Points of Interest database is not entitled to *any* copyright protection.  In that case, the court applied the established rule that "the copyright for a work describing how to perform a process does not extend to the process itself."  *Id.* 803 F.3d at 1037-38 (internal quotations and citation omitted).  Defendants contend PhantomALERT is attempting to copyright a "process," pointing to the "process described for arriving at the database."  See Motion at 9.   While PhantomALERT points to that process to show that its database is an original work of authorship, however, it is not seeking protection for the process itself, in contrast to the plaintiff in *Bikram's Yoga*.

Defendants also rely on the Ninth Circuit's conclusion in *Bikram's Yoga* that the yoga sequence in that case was not protectable as a compilation because "medical and functional considerations at the heart of the Sequence compel the very selection and arrangement of poses and breathing exercises for which he claims copyright protection."  *Id.* at 1042.  Defendants suggest that this holding means that a compilation is not protectable, even if judgment is exercised in the selection of preexisting material, if the ultimate goal of the compilation is functional.  The undersigned finds this reading of *Bikram's Yoga* to be over-broad.  In *Bikram's Yoga,* the Court held only that the actual sequence was not entitled to protection because it was on the wrong side of the idea/expression dichotomy under §102(b).  The fact that judgment may have been exercised in the creation of the sequence did not change this fact and therefore did not render copyrightable

17

1    what otherwise would not have been entitled to protection.  Here, however, PhantomALERT is not

2    seeking to protect its process of creating a traffic app database but rather, the database itself.

3    Therefore, *Bikram's Yoga* does not apply here.

4           Next, the Court addresses Plaintiff's contention that the "selection or arrangement" of the

5    Points of Interest in its Database reflect originality.  *See* Opposition at 2. As discussed above, both

6    the selection of preexisting material that is included in a compilation and its arrangement *may*

7    involve sufficient creativity to be protectable.  The selection of preexisting material satisfies the

8    originality requirement if the compiler "mak[es] non-obvious choices from among more than a

9    few options."  *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 682 (2d Cir.1998).

10   Thus, for example, in *Eckes v. Card Prices, Update*, the court found that a price directory for

11   baseball cards was copyrightable as a compilation based on the originality associated with

12   selecting 5,000 "premium" cards out of 18,000 listed cards where the same list of premium cards

13   was included in the defendant's baseball card directory.  736 F.2d 859, 862-863 (2d Cir. 1984).

14   Similarly, in cases involving maps, courts have held that where the map's creator exercised

15   sufficient judgment in determining which information to include on the map, copyright protection

16   is available.  *See, e.g., City of New York v. Geodata Plus, LLC*, 537 F. Supp. 2d 443, 451

17   (E.D.N.Y. 2007) (holding that digital map files containing coordinates that allowed user to view

18   vectorized images of tax blocks in New York was protectable based, in part, on the conclusion that

19   the creators "made decisions concerning which features to incorporate and which to exclude");

20   *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 141 (5th Cir. 1992) (finding that maps containing

21   survey data were protectable based, in part, on the fact that creator made independent choice "to

22   select information from numerous and sometimes conflicting sources").

23          On the other hand, "[a] compilation may lack the requisite creativity where: '(1) industry

24   conventions or other external factors dictate selection so that any person compiling facts of that

25   type would necessarily select the same categories of information; (2) the author made obvious,

26   garden-variety, or routine selections, or (3) the author has a very limited number of options

27   available.'" *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 599 (S.D.N.Y. 2007)

28   (quoting *O.P. Solutions Inc. v. Intellectual Property Network Ltd.*, 52 U.S.P.Q.2d 1818, 1823

United States District Court
Northern District of California

18

(S.D.N.Y. Oct.21, 1999) (citing *Matthew Bender & Co.*, 158 F.3d at 682–83)).  For example, in

*Silverstein*, the court found that a compilation aimed at publishing *all* of the poems of a particular

poet that the creator could find was not original.  522 F. Supp. 2d at  599.  In *Matthew Bender &*

*Co.*, the Second Circuit  found that West Publishing's selection of parallel and alternate citations

was  not sufficiently original to be protectable because "almost every one of West's decisions

relating to citation alterations is inevitable, typical, dictated by legal convention, or at best binary."

158 F.3d at 685.

Arrangement of preexisting materials also may satisfy the originality requirement.  For

example, in *Craigslist Inc. v. 3Taps Inc.*, the court found that Craigslist had sufficiently alleged a

protectable copyright as a compilation where its classified listings were organized in a particular

way, first based on geographical area and then in categories of products and services.  942 F.

Supp. 2d 962, 972 (N.D. Cal. 2013) (citing *Key Pub'ns, Inc. v. Chinatown Today Publ'g Enters.,*

*Inc.*, 945 F.2d 509, 514 (2d Cir.1991)).  In *Key Publications*, the Second Circuit found that the

arrangement of a yellow pages directory into categories involved "the de minimis thought needed

to withstand the originality requirement," in contrast to the arrangement of information in the

white page listings at issue in *Feist*.  945 F.2d at 514.

Here, Plaintiff has not alleged any specific facts that suggest that the arrangement of the

information in its Points of Interest database is characterized by any originality.  There are no

allegations that the data is organized into categories, for example, or that there is anything creative

about the way the data is displayed.  Further, to the extent Plaintiff alleges the information in the

database is edited so as to alert the driver of the Point of Interest before reaching the actual

location, *see* Compl. ¶ 22, there appears to be no creativity involved in these changes.  As

discussed above, the arrangement of the Points of Interest on the map merely effectuates the

purpose of the database; presumably any app intended to alert drivers of the types of points of

interest contained in Plaintiff's database would make very similar changes.

On the other hand, the allegations relating to the *selection* of the Points of Interest in

Plaintiff's database may be sufficient to meet the originality requirement because PhantomALERT

alleges it has included only Points of Interest it believes will be important to users of the App.

1    Compl. ¶ 21.  It offers as an example the possible omission from its database of a "speed trap" that

2    it determines "does not pose a significant risk to users of the app."  *Id*.  Construing these

3    allegations in the light most favorable to Plaintiff, such determinations may involve sufficient

4    exercise of judgment to satisfy the originality requirement and therefore, Plaintiff has alleged that

5    it has a protectable copyright interest in its Database.

6         Plaintiff has not, however, alleged facts showing that Defendants' conduct falls within the

7    scope of its copyright interest.  Although the Complaint expressly alleges that Waze copied the

8    Points of Interest database "in its entirety," it is not apparent from Plaintiff's allegations how any

9    creativity associated with that selection is implicated in the fact that Waze allegedly "incorporated

10   the data" into its own app "in modified form."  Complaint ¶¶ 35, 38.  Similarly, Plaintiff alleges as

11   to Google only that it "incorporated . . . information from the PhantomALERT Points of Interest

12   database" into its mapping services.  Compl. ¶ 52.   As discussed above, the copyright protection

13   afforded a compilation is "thin."  Thus, for example, in *Assessment Technologies of WI, LLC v.*

14   *Wiredata, Inc*., the Seventh Circuit found that the plaintiff had no protectable interest in the data

15   contained in its copyrighted database, even though the program met the originality requirement by

16   virtue of the fact that it grouped the data into fields and categories that were not obvious.  350 F.3d

17   640, 643 (7th Cir. 2003).

18        In *Assessment Technologies*, the program at issue was licensed by the plaintiff to

19   municipalities whose tax assessors used the program to input information into a database and

20   which allowed them to use certain queries to access the data.  *Id*. at 642-43.  The defendant sought

21   to obtain the data in the database; it was not interested in the structure of the database but only

22   wanted the "raw data," which it would then "sort according to its own needs."  *Id*. at 643.  The

23   court held that the extraction of the raw data from the database would not infringe the copyright,

24   which covered only the arrangement of the data, and that even if the defendant had to copy the

25   entire database, including the categories and fields, in order to extract the data, this would be

26   intermediate copying that constitutes a fair use.  *Id*. at 644-645 (citing *Sega Enterprises Ltd. V.*

27   *Accolade, Inc.*, 977 F.2d 1510, 1520-28 (9th Cir. 1992) (holding that copying of protected source

28   code solely in order to develop computer games that were non-infringing constituted a fair use

1    because the only effect of enjoining such copying would be to give the plaintiff control over non-

2    infringing products).

3         PhantomALERT attempts to distinguish *Assessment Technologies* on the basis that the

4    information contained in the database in that case was obtained and input by third parties (the real

5    estate assessors) whereas the data at issue here was obtained by Waze.  This is a distinction

6    without a difference.  However the information was obtained, the issue is whether the defendant

7    copied the element of the compilation that was original.  The creativity that may have been

8    reflected in PhantomALERT's selection of Points of Interest is not implicated by merely

9    incorporating the "raw data" into Defendants' databases along with other data already contained in

10   those databases.  Therefore, the Court concludes that Plaintiff has not alleged a protectable interest

11   as to the information Defendants have allegedly copied and incorporated into their apps and that

12   Plaintiff's copyright claim fails as to both Defendants on that basis.  Because it is possible that

13   PhantomALERT can cure this deficiency the Court will permit PhantomALERT to amend its

14   complaint.

15         **5.   Whether PhantomALERT is Required to Allege Facts Showing Access**

16         As discussed above, to prevail on a copyright infringement claim a plaintiff must establish,

17   *inter alia*, that the defendant copied "constituent elements of the work that are original." *Benay v.*

18   *Warner Bros. Entm*'t, 607 F.3d 620, 624 (9th Cir. 2010) (internal quotations and citations

19   omitted).  Where there is no direct evidence of copying, a plaintiff may establish copying by

20   showing "the defendant had access to the plaintiff's work and that the two works are substantially

21   similar."  *Id*. (citation and internal quotations omitted). "Under the 'inverse ratio' rule, if a

22   defendant had access to a copyrighted work, the plaintiff may show infringement based on a lesser

23   degree of similarity between the copyrighted work and the allegedly infringing work." *Id*. (citing

24   *Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990) (citing 2 M. Nimmer, Nimmer on

25   Copyright § 143.4, at 634 (1976));  *Rice v. Fox Broad. Co*., 330 F.3d 1170, 1178 (9th Cir.2003)).

26         Defendants point to the absence of any allegation in the Complaint that they had access to

27   the PhantomALERT "proprietary" database and further assert that the allegations in the Complaint

28   support the opposite conclusion.  In particular, they point to the allegations that PhantomALERT

*declined* to give Defendants access to its database and that the apps of both Plaintiff and Defendants depend on crowdsourcing for their information, supporting the conclusion that the data that PhantomALERT alleges was copied from its database was more likely either copied by a PhantomALERT user and uploaded to Defendant's database by that user or uploaded to *both* Plaintiff's and Defendants' databases by a user.  Reply at 7-8 (citing Compl. ¶¶ 2, 3, 29, 34). Defendants concede, however that "if two works are close enough to identical to make any claim of independent creation laughable, additional proof of access will be superfluous." *Id*. at 9.

Although Plaintiff does not allege specific facts about the Points of Interest it alleges were copied, it does allege that fictitious data used to "seed" its own website appeared on the Waze app. Compl. ¶ 39.  This allegation goes beyond the conclusory allegation of copying and taken in the light most favorable to PhantomALERT is sufficient to support an inference that Defendants had access to its database.  Therefore, the Court rejects Defendants' assertion that the copyright infringement claim is subject to dismissal on this ground.

## IV.     CONCLUSION

For the reasons stated above, the Motion is GRANTED as to the copyright infringement claim, which is dismissed as to both Defendants with leave to amend to allege facts sufficient to support a reasonable inference that Defendants have infringed a protectable copyright interest. Because jurisdiction in this case is based on the existence of a federal question under 28 U.S.C. § 1331 and Plaintiff has not stated a federal claim, the Court does not reach Defendants' challenges to Plaintiff's state law claims.  Plaintiff shall file its amended complaint within thirty (30) days of the date of this ORDER.

**IT IS SO ORDERED.**

Dated:  December 14, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge