UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHANTOMALERT, INC.,

       Plaintiff,

    v.

GOOGLE INC., et al.,

       Defendants.

Case No.  15-cv-03986-JCS

**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**

Re: Dkt. No. 35

## I.    INTRODUCTION

Plaintiff PhantomALERT, Inc. ("PhantomALERT") asserts copyright infringement and conversion claims against Defendants Google Inc. ("Google") and Waze, Inc. ("Waze") based on alleged copying of its "Points of Interest" database.  On December 14, 2015, the Court granted in part Defendants' Motion to Dismiss, finding that PhantomALERT had not sufficiently alleged a claim for copyright infringement and dismissing the complaint with leave to amend. The Court did not address Defendants' challenges to Plaintiff's state law claim for conversion.  PhantomALERT filed its First Amended Complaint ("FAC") on January 13, 2016 and Defendants now bring a Motion to Dismiss Plaintiff's First Amended Complaint ("Motion").  A hearing on the Motion was held on March 4, 2015 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED and the FAC is dismissed with leave to amend as to the copyright claim.[1]

## II.    BACKGROUND

### A.    First Amended Complaint

PhantomALERT is a Delaware corporation with its primary place of business in the

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

1   District of Columbia.  FAC ¶ 13.  According to Plaintiff, both Google and Waze are Delaware

2   corporations with their primary offices in Mountain View, California.  *Id.* ¶¶ 14-15.

3           Plaintiff alleges that it "has created Global Positioning System ('GPS')-based navigation

4   applications for mobile phones and GPS devices" that notify drivers about "Driving Conditions,"

5   that is, "traffic conditions, dangerous road segments, road hazards, and traffic enforcement

6   monitors, such as speed cameras." *Id.*  ¶¶ 1-2.  It licenses these applications ("Apps") to

7   consumers and to GPS device manufacturers.  *Id.* ¶¶ 2, 4.  PhantomALERT alleges that "[o]ver the

8   last seven years, [it] has engaged in a systematic process of identifying Driving Conditions to

9   reflect in its Apps, evaluating which Driving Conditions would be of importance to users of the

10  Apps, vetting the accuracy of the Driving Conditions reported by drivers, creating points of

11  interest in its Applications to reflect the Driving Conditions . . . , categorizing the Points of

12  Interest, organizing the Points of Interest, and removing stale Points of Interest."  *Id.* ¶ 3.

13  According to PhantomALERT, it created and maintains a proprietary database containing

14  information about  these Points of Interest, which can be accessed in real time by its Apps and

15  displayed on a GPS-generated electronic map.  *Id.* ¶ 4.  In a footnote, Plaintiff explains that the

16  FAC "distinguishes between a Driving Condition and a Point of Interest," stating:

17              The complaint refers to a Driving Condition as the facts associated
            with a particular road condition, such as the actual geographic
18          location and direction of a red light camera. This complaint refers to
            a Point of Interest as the notice of a Driving Condition that
19          PhantomALERT displays in its Apps. Moreover, in this complaint,
            the term "Driving Conditions" refers to all such road conditions, and
20          not only to those road conditions for which notice is provided in the
            PhantomALERT Apps.
21

22  FAC at 1, fn. 1.

23           PhantomALERT applied for a copyright registration with the United States Copyright

24  Office covering its App source code and its Points of Interest database as a compilation and on

25  August 20, 2015, the U.S. Copyright Office issued a copyright registration, No. TXu001954208.

26  *Id.* ¶¶  5, 37.

27           PhantomALERT alleges that it began developing its Apps in 2008.  *Id.* ¶ 17.  It alleges

28  that it "uses a systematic process for creating, selecting, coordinating, categorizing and arranging

information about the Points of Interest," whereby it first allows drivers to "submit potential Points of Interest to PhantomALERT through the Apps and to place each Point of Interest into one of several categories created by PhantomAlert." *Id*. ¶¶ 21-22.   In a footnote, PhantomALERT alleges that it "organizes its Points of Interest in its database according to a category structure that PhantomALERT developed, which includes, among other categories, railroad crossings, speed traps, speed cameras, pot holes, school zones, dangerous intersections, red light cameras, and dangerous curves." FAC ¶ 20 n. 3.   Next, PhantomALERT "evaluates whether a Point of Interest submitted by a driver reflects a genuine Driving Condition, and whether that Driving Condition is of interest to PhantomALERT users." *Id*. ¶ 23.  PhantomALERT alleges that in making this determination it uses "a proprietary formula as well as human judgment." *Id*. ¶ 23.

If PhantomALERT decides that a "reported Driving Condition would be of importance to users of the Apps" it goes on to the next step, which is describes as follows:

> PhantomALERT's staff creates one or more new and "fictitious" Points of Interest based on a synthesis of the geographic data submitted by users about a particular Driving Condition. At the same time, PhantomALERT's staff deletes some of the Points of Interest submitted by users about that Driving Condition, which were replaced by the fictitious Points of Interest. The new Points of Interest added by PhantomALERT are fictitious in the sense that PhantomALERT deliberately places the Points of Interest in geographic locations that do not reflect the actual location of the Driving Condition. Rather, PhantomALERT places the fictitious Points of Interest in locations that provide users with the most useful notice of the Driving Condition. In many cases, a fictitious Point of Interest warns users about a Driving Condition that will not immediately affect the users, such as an upcoming red light camera that is pointed in the opposite direction of a user (i.e. a camera that is only monitoring traffic flowing in the opposite direction of the user). PhantomALERT knows that its users wish to receive notice of such a Driving Condition even if that Driving Condition will not immediately affect the users. One reason for this is that drivers wish to learn about Driving Conditions on routes they travel frequently, such as a daily commute. By learning about Driving Conditions using the Apps, drivers become acclimated and able to recall the presence of those Driving Conditions even when they are not using the Apps. Thus, PhantomALERT's Points of Interest do not seek to reflect the actual geographic facts associated with a particular Driving Condition—rather, PhantomALERT's Points of Interest seek to provide users with the most useful notice of a Driving Condition based on PhantomALERT's judgment and experience.

*Id*. ¶ 24.

3

United States District Court
Northern District of California

United States District Court
Northern District of California

The FAC illustrates this process with a series of graphics and a hypothetical red-light camera. *Id*. ¶ 25-32 & Figs. 1-5. Figure 1 is described as a "hypothetical graphic . . . reflect[ing] the actual geographic location of a Driving Condition – *i.e.* the actual geographic location of the hypothetical red light camera." *Id*. ¶ 26 & Fig. 1. Figure 2 "reflects the cluster of Points of Interest that would be submitted by users to identify the red light camera at issue." *Id*. ¶ 27 & Fig. 2. Figure 3 "reflects the 'fictitious' Points of Interest that would be added by PhantomALERT to provide notice of the red light camera." *Id*. ¶ 28 & Fig. 3. This figure shows that the Points of Interest corresponding to the red light camera are not placed at "the actual location of the red light camera or in close proximity to it." *Id*. ¶ 28. "Rather, PhantomALERT would place the Points of Interest for the red light camera in multiple geographically distinct locations—several of which may not even be on the road/direction affected by the red light camera." *Id*. PhantomALERT explains further that its "goal in creating these Points of Interest would not be to inform users about the actual location of the red light camera" but instead to "provide users with notice that they were approaching an area that contained a red light camera, regardless of whether the user would be immediately affected by that camera." *Id*. PhantomALERT further alleges, "[u]sing this process, PhantomALERT selected, coordinated, categorized, and arranged the data comprising its Points of Interest in a creative and original manner that sought to increase the usefulness of its Apps." *Id*.; *see also* FAC ¶ 36. "As a final step, PhantomALERT reviews the timing of the various users' submission of a particular Point of Interest to ensure that the Point of Interest remains relevant." *Id*. ¶ 33. Thus, for example, a speed trap may be removed from the database if there have been no recent reports of the trap. *Id*.

Finally, the FAC includes two figures depicting "[f]alse 'trigger' locations," that is, locations showing "fictitious Points of Interest" that are displayed in the Apps to "give drivers notice before they reach the single actual [Driving Condition] . . . ." *Id*. ¶ 32 & Figs. 4, 5. PhantomALERT explains that "another reason [it] creates fictitious Points of Interest is that unlike the PhantomALERT Apps, PhantomALERT has no control over how and when non-smartphone portable navigation devices ("PNDs" . . .) display PhantomALERT's Points of Interest or audibly notify drivers of their presence" and therefore, it has "create[d] additional fictitious Points of

Interest, which cause PNDs to give additional and more useful notifications to drivers." *Id*. ¶ 35.

PhantomALERT alleges that Defendant Waze is a wholly owned subsidiary of Waze Mobile Ltd., an Israeli Company formed in 2007. *Id*. ¶ 40. According to Plaintiff, Waze competed with PhantomALERT by operating a GPS-based application that "provides route information and traffic details, including accidents, congestion, and speed and police traps," until June 2013, when "Google acquired all of the assets and liabilities of Waze, and Waze was merged into Google." *Id*. ¶¶ 41, 44. PhantomALERT alleges that Google has operated the Waze app since it acquired Waze. *Id*. ¶ 45.

According to Plaintiff, on July 30, 2010, the CEO of Waze, Noam Bardin, sent the CEO of PhantomALERT, Yoseph Seyoum, an email proposing that the two companies cooperate in the operation of their respective GPS-mapping companies. *Id*. ¶ 46. In a telephone conversation the same day, Bardin proposed that the companies exchange their respective Points of Interest databases, but Seyoum declined the offer because "Waze did not appear to have substantial data to share." *Id*. ¶ 47. Plaintiff alleges, on information and belief, that in late 2012 "Waze copied the PhantomALERT Points of Interest database in its entirety . . . without any authorization or consent." *Id*. ¶ 48. Plaintiff further alleges, on information and belief, that "Waze copied the PhantomALERT Points of Interest database on multiple, additional occasions as the database was updated, starting in or around late 2012." *Id*. ¶ 49. PhantomALERT alleges that "Waze incorporated the data into the Waze application in a modified form, but retaining the location and categorization of the Points of Interest created by PhantomALERT," thus creating "multiple unauthorized derivative works." *Id*. ¶ 50. PhantomALERT alleges, "[o]n information and belief, after copying the PhantomALERT database, Waze displayed the data to users through the Waze application" thereby creating "further unauthoriz[ed] derivative works, using the same categorization structure as assigned to the Points of Interest by PhantomALERT." *Id*. ¶ 51.

According to PhantomALERT, it "determined that Waze had copied its Points of Interest database by observing the presence of Points of Interest in the Waze application that referred to fictitious Driving Conditions, and which PhantomALERT had seeded into its own database for the purpose of detecting copying or to enhance the capability of the PhantomALERT Points of

1    Interest database to work with third party systems . . . and licensees." *Id*. ¶ 52.  It further alleges,

2    on "information and belief," that "Waze copied the PhantomALERT database on multiple

3    occasions after late 2012, re-incorporated the copied data into the Waze application, in a wholesale

4    manner, or in part while keeping PhantomALERT's categorization structure, and continued to

5    display the Points of Interest data to the users of the Waze application." *Id*. ¶ 53.

6    PhantomALERT alleges on "information and belief" that "Google continued to operate the Waze

7    application, which copied, modified, and displayed copyrighted information from the

8    PhantomALERT Points of Interest database, after it acquired Waze in June 2013." *Id*. ¶ 54.

9        Plaintiff asserts claims for copyright infringement and conversion against Waze and

10   Google.  In the copyright infringement claim, Plaintiff alleges that the individual Points of Interest

11   "reflect creative works by PhantomALERT" because they "reflect PhantomALERT's best guess

12   about when and where a user should be notified about a Driving Condition." *Id*. ¶ 56.

13   PhantomALERT further alleges that "the Points of Interest that populate the PhantomALERT

14   database were selected, coordinated, categorized, and arranged by PhantomALERT in such a way

15   as to render the database as a whole original." *Id*. ¶ 57.  PhantomALERT alleges that it has "an

16   active and valid copyright registration covering the PhantomALERT database as a compilation,

17   Registration No. TXu001954208." *Id*. ¶ 59.  Plaintiff alleges, on "information and belief," that

18   Defendants copied and reproduced the Database without its consent and "prepared derivative

19   works" of the Database and the individual Points of Interest.  *Id*. ¶ 62.  According to Plaintiff, the

20   copies of the Database, the individual Points of Interest, and/or "derivative works thereof," were

21   distributed to the public "by sale, lease, or lending in the form of an end user license agreement"

22   and publicly displayed by Defendants starting in late 2012 and continuing past June 2013.  *Id*. ¶¶

23   63-64.  PhantomALERT alleges on information and belief that "in June 2013, Google acquired all

24   of Waze's liabilities, including all liability associated with Waze's copyright infringement." *Id*. ¶

25   65.  In addition, Plaintiff alleges on "information and belief" that "following Google's acquisition

26   of Waze, Google incorporated aspects of the Waze application, including information from the

27   PhantomALERT Points of Interest database and individual Points of Interest, into Google's own

28   mapping services," and that it "reproduced the information from the Points of Interest database,

United States District Court
Northern District of California

1    created derivative works from the information, displayed the information, and sold or leased the

2    information to users through an end user license agreement." *Id*. ¶ 66.

3           In the conversion claim, PhantomALERT alleges that it owns the data within the Points of

4    Interest database, that Waze "copied the PhantomALERT database and incorporated the data into

5    the Waze application, thereby disposing of PhantomALERT's property in a manner inconsistent

6    with PhantomALERT's possession of that property" and that "Google acquired all of Waze's

7    liabilities, including all liability associated with Waze's wrongful conversion of the

8    PhantomALERT database." *Id*. ¶¶ 70-71.

9           In the Prayer, Plaintiff asks the Court to award compensatory damages for its own lost

10   profits and Defendants' wrongful profits, "including through the calculation of a reasonable

11   royalty" under the Copyright Act, compensatory and punitive damages on the conversion claim,

12   and injunctive relief enjoining Defendants' operation of the Waze website and application. *Id*. at

13   8.

14          **B.     The Motion**

15          In the Motion, Defendants contend the allegations in the FAC, like those in the original

16   complaint, are insufficient to support Plaintiff's copyright claims against either Waze or Google.

17   First, although PhantomALERT has added detailed allegations describing the way it uses "false"

18   facts, Defendants argue, these new allegations do not change the fact that PhantomALERT fails to

19   state a claim for copyright infringement based on copying of the individual Points of Interest.

20   Motion at 1, 6-9.  To the extent PhantomALERT alleges it manipulates the user-reported data, the

21   changes it makes are purely functional; the Points of Interest are still facts, Defendants argue,

22   intended to give users "truthful, reliable information about the location of real-world" driving

23   conditions. *Id*. at 1-2. According to Defendants, such facts are not protected. *Id*. at 2.

24          Second, Defendants argue that the allegations relating to the way the Points of Interest are

25   arranged and displayed appear to be the product of PhantomALERT's application rather than what

26   is contained in the underlying database, which is the actual work for which copyright protection is

27   claimed. *Id*. at 2.  In support of this argument, Defendants ask the Court to take judicial notice of

28   the database that was registered by PhantomALERT with the United States Copyright Office. *Id*.;

United States District Court
Northern District of California

7

1   *see also* Request for Judicial Notice ("RJN"), Ex. C.[2]  According to Defendants, this database

2   "contains none of the modifications, arrangements or displays described in the FAC" but instead is

3   "the rawest imaginable list of thousands of pages[3] of pure factual data, apparently arranged in

4   chronological order of user reports." Motion at 2-3.   Thus, Defendants assert, the actual database

5   belies PhantomALERT's conclusory allegation that it contains a "categorization structure" that is

6   subject to copyright protection;  as in *Feist*, the organization of the database is so obvious that

7   there is no expression associated with it that is protectable.  *Id*. at 4.

8            As in their previous motion, Defendants also invoke *Assessment Technologies of WI, LLC*

9   *v. WIREdata, Inc*., 350 F.3d 640, 646 (7th Cir. 2003), in which the court found that copying of a

10  database by a defendant who used it only to extract the raw data was a fair use that did not give

11  rise to a claim for copyright infringement. *Id*. at 7-8.

12           Defendants also argue that the allegations in the FAC make it even more clear than in the

13  original complaint that to the extent PhantomALERT is seeking protection for its database as a

14  compilation, that protection is not available under the Ninth Circuit's decision in *Bikram's Yoga*

15  *College of India L.P. v. Evolation Yoga, LCC*,  803 F.3d 1032 (9th Cir. 2015).  *Id*. at 9-13.  In

16  particular, because it is seeking protection of a "systematic process for selecting, coordinating,

17  categorizing and arranging information," *id*. at 11 (quoting FAC ¶ 21), PhantomALERT's

18  copyright claim falls on the "idea" side of the idea/expression dichotomy, rendering the database

19  unprotectable, Defendants assert.  *Id*. at 9-13.

20           Finally, Defendants argue that even if the list of data in the Points of Interest database were

21  protectable as a compilation, the protection afforded compilations is thin and PhantomALERT still

22

23  _____

24  [2] PhantomALERT does not object to Defendants' request for judicial notice of the copyright
    registration for the PhantomALERT Website Source Code and Database, under TXu 1-954-208,
    which is GRANTED. *See Warren v. Fox Family Worldwide, Inc*., 171 F. Supp. 2d 1057, 1062

25  (C.D. Cal. 2001) aff'd, 328 F.3d 1136 (9th Cir. 2003)(granting request for judicial notice of
    copyright registration pursuant to Fed. R. Evid. 201 and noting that "[c]opyright certificates are

26  the type of documents that the court may judicially notice under Rule 201(b)(2)") (citations
    omitted).

27  [3] At oral argument, Defendants explained that the pages attached to the Certificate of Registration
    are only an excerpt of the Points of Interest database. Defendants deduce that the Points of Interest

28  database runs in the thousands of pages based on the page numbering that can be seen in the
    excerpt.

United States District Court
Northern District of California

has not alleged the sort of "near-literal copying" that is actionable. *Id*. Instead, PhantomALERT has merely alleged that "Waze copied unspecified individual facts from unspecified portions of PhantomALERT's database in unspecified ways, and added those unprotectable facts to Waze's existing product in unspecified ways and locations." *Id*. Similarly, it asserts, PhantomALERT has included only a single, conclusory allegation as to Google, alleging only that it "copied, modified, and displayed copyrighted information from the PhantomALERT Points of Interest database." *Id*. at 19-20 (citing FAC ¶ 54).

In addition to challenging the copyright claim asserted in the FAC, Defendants renew their challenges to Plaintiff's conversion claim, which the Court did not reach in its previous order. Defendants urge the Court to rule on whether this pendant state law claim is preempted and/or adequately alleged even if it dismisses the copyright claim on the basis that they would likely remove any subsequent action for conversion that PhantomALERT filed in state court if the Court declines to exercise supplemental jurisdiction over the conversion claim.

Defendants also renew their challenge to PhantomALERT's claims against Google. *Id*. at 19-20. First, they argue that there can be no liability based on Google's acquisition of Waze because judicially noticeable facts establish that Google and Waze did not "merge," contrary to the allegations in the FAC. *Id*. In particular, Defendants ask the Court to take judicial notice of a copy of the certified Delaware certificate of good standing for Waze, Inc., dated October 5, 2015. *Id*. at 19; RJN, Ex. A.[4]   According to Defendants, this document establishes that Waze continues to operate as a separate corporate entity from Google and therefore, that the two companies did not merge. *Id*. Second,  Defendants contend,  the conclusory allegations in the FAC relating to Google's conduct amount to the mere copying of information and therefore are insufficient to state a copyright claim against Google based on its own conduct.

In its Opposition brief, PhantomALERT counters that the individual Points of Interest are protectable because they are not pure facts; instead, they reflect creativity as to their location and

---

[4] Like the copyright registration, Plaintiff does not object to Defendants' request for judicial notice of the certificate of good standing, which is GRANTED on the basis that it is a public record whose contents can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  direction.  Opposition at 2, 6-10.  PhantomALERT points to cases involving the protection of

2  maps in support of its position, asserting that while the facts reflected on maps – namely, the

3  existence of geographical features – are not protected, "any originality in the expression of that

4  factual information within a map is protectable."  *Id*. at 7.  According to PhantomALERT, such

5  originality can be found in the "independent creative decision[s]" it made as to the location of the

6  Points of Interest.  *Id*. at 10.  The fact that the database consists of "raw data" is of no moment, it

7  contends, because "the salient question is whether PhantomALERT selected those coordinates

8  based on its own independent analysis."  *Id*.

9        In addition, PhantomALERT argues, the database that it registered with the Patent Office

10  is copyrightable as a compilation.  *Id*. at 10-11.  According to PhantomALERT, the database

11  shows creativity as to the categorization of the data to the extent that the column labeled

12  "enforcement_type_id" contains "category identifiers that PhantomALERT users input, and which

13  PhantomALERT further reviews and changes."  *Id*. at 10 n. 3.  PhantomALERT further contends

14  the Court has already found that the Points of Interest database is protectable as a compilation

15  because the selection of the information in the database involved creativity.  *Id*. at 2.

16        According to PhantomALERT, the Court also has already found that it has adequately

17  alleged that Defendants "accessed and copied" the individual Points of Interest.  *Id*. at 12.

18  PhantomALERT further contends it has adequately alleged that Defendants infringed on its

19  exclusive rights by copying the Points of Interest from the database, incorporating the data into the

20  Waze application "in a modified form, but retaining the location, categorization and direction of

21  the Points of Interest, and . .  display[ing] those Points of Interest to Waze users."  *Id*. (citing FAC

22  ¶¶ 48-51).  PhantomALERT argues that it has also adequately alleged infringement  based on

23  copying of the Points of Interest database as a whole, as a compilation, alleging that Defendants

24  "made wholesale copies of the Points of Interest database before they integrated it into the Waze

25  application."  *Id*. at 13 (citing FAC ¶¶ 48-49).  PhantomALERT further contends there is a

26  question of fact "about whether Defendants' display of the Points of Interest in the Waze

27  application infringed on PhantomALERT's compilation (*i.e.,* whether Defendants' display of the

28  Points of Interest infringed on PhantomALERT's copyright in the selection of the Points of

10

1   Interest in the database)." *Id*.  PhantomALERT also points to its allegation that Defendants

2   "copied PhantomALERT's categorization of Points of Interest and then displayed that

3   categorization in the Waze application." *Id*. at 14.

4         PhantomALERT rejects Defendants' arguments challenging its conversion claim for the

5   same reasons stated in its previous brief.  With respect to Defendants' challenges to

6   PhantomALERT's claims against Google, PhantomALERT contends it has alleged sufficient facts

7   relating to Google's own conduct to state claims for copyright infringement and conversion. *Id*. at

8   19.   It further contends that to the extent it alleges in the FAC  that Google is liable for Wazes's

9   conduct on the basis of merger, these allegations are sufficient at the pleading stage of the case

10  because there are questions of fact about the nature of Google's acquisition of Waze,

11  notwithstanding the certificate showing that Waze, Inc. continues to operate as a Delaware

12  corporation.  *Id*. at 20-21.

### III.    ANALYSIS

#### A.    Legal Standard Under Rule 12(b)(6)

15        A complaint may be dismissed for failure to state a claim on which relief can be granted

16  under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6).  "The

17  purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

18  complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a

19  plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil

20  Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short

21  and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

22  8(a).

23        In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

24  takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

25  non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In

26  addition to the facts alleged in the complaint, the Court may consider facts of which it has taken

27  judicial notice and documents incorporated into the complaint by reference.  *Skilstaf, Inc. v. CVS*

28  *Caremark Corp*., 669 F.3d 1005, 1016 n. 9 (9th Cir. 2012).  Dismissal may be based on a lack of a

United States District Court
Northern District of California

1   cognizable legal theory or on the absence of facts that would support a valid theory.  *Balistreri v.*
2   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff need not plead a prima facie
3   case in order to survive a motion to dismiss pursuant to Rule 12(b)(6).  *Swierkiewicz v. Sorema*
4   *N.A.*, 534 U.S. 506, 514-15 (2002); *see also Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)
5   (reaffirming the holding of *Swierkiewicz* in light of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and
6   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  A complaint must, however, "contain either
7   direct or inferential allegations respecting all the material elements necessary to sustain recovery
8   under some viable legal theory."  *Twombly*, 550 U.S. at 562 (citing *Car Carriers, Inc. v. Ford*
9   *Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

10      "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements
11   of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).
12   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual
13   enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible on
14   its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court
15   to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*
16   (quoting *Twombly*, 550 U.S. at 570).

17      **B.   Copyright Claim**

18      "To establish infringement, two elements must be proven:  (1) ownership of a valid
19   copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns,*
20   *Inc. v. Rural Tel. Ser. Co.*, 499 U.S. 340, 345 (1991) (citation omitted).   The first element requires
21   that "a work must be original to the author."  *Id.* at 345.  In *Feist*, the Court explained that
22   "[o]riginal, as the term is used in copyright, means only that the work was independently created
23   by the author (as opposed to copied from other works), and that it possesses at least some minimal
24   degree of creativity."  *Id.* (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990)).
25   Thus, "a work may be original even though it closely resembles other works so long as the
26   similarity is fortuitous, not the result of copying."  *Id.*   As discussed in this Court's previous
27   order, a fact is not considered to be "original" because it is merely discovered and does not involve
28   authorship; a compilation of facts, on the other hand, may be original (and therefore entitled to

1   copyright protection) because "[t]he compilation author typically chooses which facts to include,

2   in what order to place them, and how to arrange the collected data so that they may be used

3   effectively by readers." *Id*.

4         To meet the second element of a copyright claim, a plaintiff must demonstrate that the

5   "constituent elements of the work that are original" were copied.  *Id*.  In the context of a

6   compilation of facts, where the author has not "clothe[d] [the] facts with an original collocation of

7   words" but instead, has "let[] the facts speak for themselves," "[t]he only conceivable expression

8   is the manner in which the compiler has selected and arranged the facts." *Id*. at 349.

9   Consequently, "a subsequent compiler remains free to use the facts contained in another's

10   publication to aid in preparing a competing work, so long as the competing work does not feature

11   the same selection and arrangement." *Id*.

12         Applying these principles to the case at hand, PhantomALERT can state a claim for

13   copyright infringement only if it can allege facts supporting a plausible inference that: 1) it has a

14   protectable copyright interest in the Points of Interest database based on originality associated with

15   the  individual Points of Interest, the database as a whole, or both; and 2) Defendants copied the

16   Points of Interest or the database as a whole in a manner that preserved the originality that gives

17   rise to copyright protection..  For the reasons stated below, the Court concludes that the allegations

18   in the FAC  are sufficient to demonstrate a protectable copyright interest but not to support a

19   plausible inference of copying.

20         **1.   Whether PhantomALERT Has Alleged Facts Showing a Protectable**
                 **Copyright Interest**

21

22         a.   The Individual Points of Interest

23        In the Court's previous order, it found that the individual Points of Interest in

24   PhantomALERT's database were "inherently factual" and therefore were not entitled to copyright

25   protection, even though some of the facts that were listed in the database were alleged to be false

26   listings that were seeded in the database to identify copying.  Docket No. 33 at 15-16.  The Court

27   rejected PhantomALERT's reliance on *CDN v. Kapes*, concluding that the estimated prices listed

28   in the price guide in that case – which the Ninth Circuit found were not facts but instead the result

United States District Court
Northern District of California

1    of a creative process that gave rise to copyright protection – were not analogous to the Points of

2    Interest as characterized in the original complaint. *See* 197 F.3d 1256, 1259-60 (9th Cir. 1999).

3    The Court now finds that the FAC alleges sufficient facts to support a plausible inference that at

4    least some of the Points of Interest in its database are characterized by sufficient originality to

5    warrant copyright protection.

6         The allegations in Plaintiff's original complaint indicated that the Points of Interest in its

7    database were entirely factual, with the exception of the fictitious Points of Interest that were

8    seeded in the database to detect copying.  In the FAC, however, Plaintiff has differentiated

9    between the actual Driving Conditions and the Points of Interest, alleging that these Points of

10   Interest are placed at locations other than the actual locations of the Driving Conditions. *See* FAC

11   ¶¶ 24-32.  PhantomALERT further alleges that these locations are determined not simply on the

12   basis of the advance warning necessary to alert drivers in the immediate vicinity as they approach

13   a particular driving condition.  Rather, PhantomALERT alleges that the locations reflect

14   judgments that it has made based on experience and understanding that drivers desire to know

15   about driving hazards in the vicinity even if they will not be immediately affected. *Id.*  Thus, a

16   Point of Interest may notify a user travelling on a different street or in a different direction of a

17   nearby Driving Condition. *Id.*  To the extent these allegations support an inference that the

18   locations of some of the Points of Interest do not reflect the actual location of the corresponding

19   Driving Condition and also are not purely a function of the need to give drivers notice as they

20   approach a particular Driving Condition, the Court finds that PhantomALERT has  sufficiently

21   alleged that these individual Points of Interest reflect a "creative spark" and therefore, like the

22   prices in *CDN v. Kapes*., are entitled to copyright protection.

23                  b.   The Points of Interest Database

24         In the FAC, as in the original complaint, PhantomALERT alleges that its selection of the

25   Points of Interest included in its database involves a process of evaluating the Driving Conditions

26   reported by users of its Application, including "vetting" them and making judgments about which

27   ones would be useful to drivers based on "a proprietary formula as well as human judgment."

28   FAC ¶¶ 23, 33-34, 36.  For the reasons stated in the Court's previous order, these allegations are

United States District Court
Northern District of California

1   sufficient to demonstrate that the selection of the Points of Interest in the database are original and

2   therefore, that that selection is protectable under the Copyright Act.

3           PhantomALERT also alleges sufficient facts in the FAC to demonstrate that its database

4   uses a system of categorization that is characterized by some minimal degree of originality.  In

5   particular, it alleges that it "organizes its Points of Interest in its database according to a category

6   structure that PhantomALERT developed, which includes "railroad crossings, speed traps, speed

7   cameras, pot holes, school zones, dangerous intersections, red light cameras, and dangerous

8   curves."  FAC ¶ 20 n. 3.   According to PhantomALERT, these categories are reflected in the

9   copyrighted work in the "enforcement_type_id" column of the database, which contains "category

10  identifiers."  Opposition at 10 n. 3; RJN, Ex. C.  While the categories used by PhantomALERT are

11  not novel, they "go beyond the mere mechanical grouping of data as such, for example, the

12  alphabetical, chronological, or sequential listings of data," and therefore the categorization used in

13  the database is protected.  *See Key Publications, Inc. v. Chinatown Today Pub. Enterprises, Inc.*,

14  945 F.2d 509, 513-14 (2d Cir. 1991) (citing Copyright Office, Guidelines for Registration of Fact–

15  Based Compilations 1 (Rev. Oct. 11, 1989)).[5]

16          Finally, the Court concludes that to the extent the listings in the Points of Interest database

17  correspond to an arrangement of points on a map, the FAC alleges sufficient facts to show that the

18  arrangement of those points involved some creativity and therefore, is entitled to copyright

19  protection.  In particular, as discussed above, the FAC includes detailed allegations indicating that

20  the placement of Points of Interest is not simply based on a mechanical calculation of the notice a

21  driver requires as the driver approaches a particular Driving Condition;  rather, PhantomALERT

22  has made judgment calls about the placement of these alerts to give drivers in the vicinity notice of

23  the driving condition even if they will not necessarily be affected by them.  *See* FAC ¶¶ 28-32.

24  Therefore, while the Court previously found that the arrangement of the Points of Interest was not

25  characterized by sufficient creativity to warrant copyright protection, the Court finds that the FAC

26  meets that threshold.

27

28  ------------------------------
    [5] Defendants are correct, however, that the chronological arrangement of the listings in the Points
    of Interest database does not reflect any originality that would be protected by copyright.

*United States District Court*
*Northern District of California*

1    The Court's conclusion that the arrangement of the Points of Interest is protectable is also

2    supported by cases that have addressed the copyright protection that may be afforded maps, which

3    recognize that while the information shown on a map is not subject to copyright protection, the

4    *arrangement* of the facts depicted on the map is protectable where it shows some originality.  *See*

5    *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) (holding that a map may be

6    protectable where it "displays a significant element of compilation,  . . . even though the individual

7    components of the work may not be, for originality may be found in taking the commonplace and

8    making it into a new combination or arrangement"); *Rockford Map Publishers, Inc. v. Directory*

9    *Service Co. of Colorado, Inc.*, 768 F.2d 145, 148  (7th Cir. 1985) (explaining that a map may be

10    protected by copyright to the extent that its changes the "form of information" to "make it more

11    accessible" or to "make the data more understandable" and holding that "while everyone is free to

12    repeat the facts" reflected in a map, where the arrangement of information reflects creativity, the

13    map may not be used "as the template")); *City of New York v. Geodata Plus, LLC*, 537 F. Supp.

14    2d 443, 450 (E.D.N.Y. 2007).   Although Defendants argue that the authority that addresses maps

15    is not relevant to PhantomALERT's database, the Court finds no meaningful basis for treating the

16    Points of Interest differently depending on whether they are contained in a list of coordinates or

17    depicted graphically on a map.  *See City of New York v. Geodata Plus, LLC*, 537 F. Supp. 2d at

18    450 (holding that geographic database containing "mapping coordinates and other data" that

19    permitted users to view vectorized images of tax blocks in New York City was entitled to

20    copyright protection under *Feist* where "[p]rogrammers made numerous independent decisions

21    concerning the number and location of coordinates used to depict various shapes in the maps.").

### 2.    Whether PhantomALERT Has Alleged Facts Showing that Defendants Copied the Original Aspects of the Points of Interest or the Database as a Whole

24    Having found that PhantomALERT has alleged sufficient facts to support an inference that

25    its Points of Interest and the database as a whole are characterized by the minimal creativity that is

26    required to give rise to copyright protection, the Court next turns to the question of whether the

27    allegations in the FAC are sufficient to support a plausible inference that Defendants copied the

28    features of the Points of Interest or the database as a whole that are original.

United States District Court
Northern District of California

As a preliminary matter, the Court notes that it is not sufficient for PhantomALERT to allege facts showing that Defendants copied the original elements of the database and then *used* the copied material to extract information that was then incorporated into the Waze application. As the Court explained in its previous order, such copying would constitute a fair use under *Assessment Technologies of WI, LLC. v. Wiredate, Inc.*, 350 F.3d 640 (7th Cir. 2003) and *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1520-28 (9th Cir. 1992). PhantomALERT did not challenge Defendants' reliance on *Assessment Technologies* in their Motion and does not appear to dispute that copying merely to extract information for use in the Waze application would not give rise to a claim for copyright infringement, so long as the creative features of the Points of Interest database were not somehow reflected in the Waze application. Therefore, the Court looks to the FAC to determine whether the allegations in it support a plausible inference that the creative aspects of PhantomALERT's database were copied in the Waze application itself. The Court concludes that they do not.

As discussed in the Court's previous order, to establish copying a plaintiff must offer either direct evidence of copying or show that "the defendant had access to the plaintiff's work and that the two works are substantially similar." *Benay v. Warner Bros. Entm*'t, 607 F.3d 620, 624 (9th Cir. 2010) (citation and internal quotations omitted). "Under the 'inverse ratio' rule, if a defendant had access to a copyrighted work, the plaintiff may show infringement based on a lesser degree of similarity between the copyrighted work and the allegedly infringing work." *Id.* (citing *Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990) (citing 2 M. Nimmer, Nimmer on Copyright § 143.4, at 634 (1976)); *Rice v. Fox Broad. Co*., 330 F.3d 1170, 1178 (9th Cir.2003)). There are no specific allegations in the FAC addressing how Defendants might have gained access to PhantomALERT's database; the only allegations relating to this question are PhantomALERT's allegations that it rejected a proposal by Waze for the two companies to share data. *See* FAC ¶¶ 46-48. To create a plausible inference of copying, then, Plaintiff needs to allege facts showing that there is substantial similarity between the Points of Interest and/or the database as a whole and the Waze application reflecting that Defendants did not merely extract factual information that it

1    then incorporated into Waze but instead, copied the *original* features of PhantomALERT's work.[6]

2          As discussed above, the Court has found that the location of some of the individual Points

3    of Interest, as well as the overall arrangement of the Points of Interest, are protectable (at least as a

4    pleading matter), as are the selection of the Points of Interest and their categorization in the

5    database.  What is notably lacking in the FAC are any specific factual allegations reflecting that

6    any of these original features appear in the Waze application. PhantomALERT has not alleged that

7    any specific Point of Interest whose location involved the creative process described in the FAC

8    appears in the Waze application at the same location;  nor has it alleged any specific facts

9    suggesting that the overall arrangement, selection or categorization of the Points of Interest is

10   preserved in the Waze application such that there is "substantial similarity." Rather, the FAC

11   simply alleges that "Defendants repeatedly copied PhantomALERT's Points of interest database,

12   incorporated the data into the Waze application, and displayed the data to users of the Waze

13   application." FAC ¶ 7;  *see also* FAC ¶ 53 (alleging, on information and belief, that the "copied

14   data" was incorporated into the Waze App "in a wholesale manner, *or in part*") (emphasis added);

15   FAC ¶ 54 (alleging as to Google that it "copied, modified, and displayed copyrighted information

16   from the PhantomALERT Points of Interest database, after it acquired Waze in June 2013").

17         The Court acknowledges that PhantomALERT expressly alleges in the FAC that "after

18   copying the PhantomALERT database, Waze incorporated the data into the Waze application in a

19   modified form, but *retaining the location and categorization of* the Points of Interest created by

20   PhantomALERT." FAC ¶ 50 (emphasis added).  The Court finds, however, that this allegation,

21   which is made on information and belief, is too conclusory to support a plausible inference that

22   Defendants copied the locations and categorization of the Points of Interest database where

23   PhantomALERT has failed to identify a single specific Point of Interest that was actually copied

24

25   _____

     [6] In its previous Order, the Court held that PhantomALERT's allegations that Defendants copied
26   certain "seeded" facts were sufficient to support an inference of access.  Given that these "seeded"
     facts could have been obtained in a variety of ways that do not involve actual access to the
27   PhantomALERT database (such as simply using the PhantomALERT App), this inference of
     access is extremely weak and therefore does not permit PhantomALERT to avoid the requirement
28   that it allege sufficient facts to support a plausible inference of substantial similarity as to the
     creative aspects of the PhantomALERT Points of Interest and/or database.

United States District Court
Northern District of California

1   by Defendants in the Waze application (at the same location or not) and has offered no specific

2   allegations explaining how the categorization reflected in its database was captured in the Waze

3   database. Under the standard of *Iqbal* and *Twombly*, more is required.

4        Accordingly, the Court concludes that PhantomALERT fails to state a claim for copyright

5   infringement in the FAC.  PhantomALERT will be given leave to amend to address the

6   deficiencies discussed above.[7]

7        **C.     Conversion Claim**

8        Defendants argue that Plaintiff's conversion claim fails because: 1) it has not alleged that it

9   was dispossessed of a property right by Defendants' conduct; and 2) the claim is preempted by the

10  Copyright Act.  Because the Court finds that the claim is preempted, the Court does not reach the

11  question of whether the claim is adequately alleged.

12       The Copyright Act expressly preempts:

13              legal or equitable rights [under state law] that are equivalent to any
                of the exclusive rights within the general scope of copyright as
14              specified by section 106 in works of authorship that are fixed in a
                tangible medium of expression and come within the subject matter
15              of copyright as specified by sections 102 and 103.17 U.S.C. §
                301(a).
16

17  17 U.S.C. § 301.  The Ninth Circuit employs a two-part test to determine whether a state law

18  claim is subject to copyright preemption. "First, the rights that a plaintiff asserts under state law

19  must be 'rights that are equivalent' to those protected by the Copyright Act." *Kodadek v. MTV*

20  *Networks, Inc*., 152 F.3d 1209, 1212 (9th Cir. 1998) (quoting 17 U.S.C. § 301(a) and citing 1

21  Nimmer, § 1.01[B] at 1–11).  Second, "the work involved must fall within the 'subject matter' of

22  the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103."  *Id*.  Because the Points of Interest

23  database is copyrightable, as discussed above, it falls within the subject matter of the Copyright

24  ───────────────

25  [7] The Court's conclusion applies to the allegations of copying as to both Google and Waze. In its
    Second Amended Complaint, PhantomALERT may amend its allegations to establish, if it can,
26  that each of the Defendants engaged in conduct that infringed PhantomALERT's copyright.  To
    the extent that PhantomALERT seeks to hold Google liable for the conduct of Waze based on the
27  alleged merger of the two companies, the Court finds that there are factual issues relating to the
    nature of Google's relationship with and acquisition of Waze and therefore declines Defendants'
28  invitation to dismiss Google, at the pleading stage of the case, based on the fact that Waze
    continues to operate as a separate corporation.

United States District Court
Northern District of California

Act.  The more difficult question is whether the rights asserted by PhantomALERT in its

conversion claim are "equivalent" to those protected by the Copyright Act.

To avoid preemption under the second prong of the preemption test, a state law claim

"must protect rights which are qualitatively different from the copyright rights." *Design Art v.*

*Nat'l Football League Properties, Inc*., No. 00CV593 JM (JAH), 2000 WL 33151646, at *2 (S.D.

Cal. Aug. 18, 2000) (citing *Del Madera Props. v. Rhodes & Gardner, Inc*., 820 F.2d 973, 977 (9th

Cir.1987), overruled on other grounds by *Fogerty v. Fantasy, Inc*., 510 U.S. 517  (1994)). Thus,

courts ask whether the state law claim has an "extra element" that changes the nature of the claim.

*Id.*  This test compares the nature of the state law claim to that of a copyright claim; whether or

not the plaintiff has adequately alleged either claim is a separate issue.  *See Firoozye v. Earthlink*

*Network*,  153 F. Supp. 2d 1115, 1131 (N.D. Cal. 2001) ("The defendants' contention that the

plaintiff has failed to allege a confidential relationship and their citation to *Design Art* address the

merits of the plaintiff's trade secret claim, not whether that claim is preempted by the Copyright

Act").

In a case involving conversion of physical property, copyright preemption is usually

avoided because the plaintiff is required to establish that it wrongfully obtained possession over a

specific piece of property, which has been found to constitute an extra element.  *See id.* at 1130.

Where a claim for conversion is based on unauthorized copying but does not allege wrongful

dispossession of physical property (or seek its return), however, preemption is avoided only where

some other "extra element" is present.  *See id*.  For example, in *G.S. Rasmussen & Associates, Inc.*

*v. Kalitta Flying Serice, Inc*., the Ninth Circuit found that a claim for conversion was not

preempted by the Copyright Act, even though the claim was based on allegedly unauthorized

copying, because the claim went further to incorporate elements "beyond mere reproduction."  958

F.2d 896 (9th Cir. 1992).

In *G.S. Rasmussen & Associates*, the defendant was alleged to have copied a certificate

(the "STC") obtained by plaintiff from the Federal Aviation Administration ("FAA") and used it

to obtain an airworthiness certification from the FAA for its own modified aircraft design. *Id*. at

899-900.  The plaintiff had obtained the STC after submitting "volumes of technical data to the

United States District Court
Northern District of California

20

FAA" "[b]ased on hundreds of hours of engineering work." *Id.* at 899. Although he offered to license the STC to the defendant, the defendant declined the offer and instead decided to "pirate" the STC by typing the number of the STC on its application form and enclosing a copy of the STC itself. *Id.* The plaintiff asserted a claim for conversion, asserting that the defendant was "free-riding on his effort." *Id.* The district court concluded that the conversion claim was preempted by the Copyright Act but the Ninth Circuit reversed. *Id.* at 900.

After finding that the plaintiff had a property right in the STC under California law, the court in *Rasmussen* turned to the question of preemption. The court recognized that "copyright provides the sole remedy for their unsanctioned duplication" and thus, [w]ere [the plaintiff] claiming an exclusive right to copy the manual, the drawings and plans or the STC itself, his claim would surely be preempted by the Copyright Act." *Id.* at 904. The court found, however, that the plaintiff claimed "a much different interest," namely, the right "to use the STC as a basis for obtaining an airworthiness certificate for an airplane that is modified in a particular way." *Id.* The court explained, "Rasmussen thus complains not about the actual copying of the documents, but of their use as a shortcut in obtaining a valuable government privilege—the right to modify an airplane in a particular way without going to the trouble and expense of proving that the modification meets FAA standards." *Id.* The court held, therefore, that while the defendant was free under the copyright law to make as many copies of the STC is it wished, the plaintiff's conversion claim was not preempted because preventing the defendant "from then using these copies to obtain an airworthiness certificate from the FAA does not interfere in any way with the operation of the copyright laws." *Id.*

Another case in which a court held that a conversion claim was not preempted even though the plaintiff did not allege wrongful dispossession of physical property is *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 972 (N.D. Cal. 2015). In that case, the plaintiffs alleged that the defendants had preloaded their devices with apps that allowed them to access the plaintiffs' electronic address books and disseminate the information to third parties without the plaintiffs' knowledge or authorization, was not preempted. 84 F. Supp. 3d at 971-972. The court found that the claim was not preempted because "Plaintiffs' allegations involve more than the mere reproduction of

United States District Court
Northern District of California

Plaintiffs' address book data; they include the unauthorized access, transmission, misuse, and misappropriation of that data." *Id.* at 989.

In *Salestraq Am., LLC v. Zyskowski*, also cited by PhantomALERT in support of its assertion that its conversion claim is not preempted, the court found that state law claims for commercial misappropriation, unjust enrichment, and breach of a nonexclusive license were not preempted where the plaintiff alleged the defendant had copied information about residential properties that the plaintiff had compiled and made available to users through plaintiff's website. 635 F. Supp. 2d 1178, 1185 (D. Nev. 2009). The defendant obtained access to the information that was allegedly copied by entering into a subscription agreement with the plaintiff. *Id.* at 1180. Subsequently, the defendant made the copied information available on its own competing website. *Id.* The defendant argued that the plaintiff's state law claims were preempted by the federal Copyright Act but the court disagreed. The court held, "SalesTraq's state claims allege, not only that Defendants copied the [plaintiff's intellectual property], but also that Defendants used the [plaintiff's intellectual property] for their own commercial benefit in violation of state law. Thus, under *Rasmussen*, SalesTraq's allegations change the nature of its state claims so that they are qualitatively different from a copyright infringement claim." *Id.*

On the other hand, in *Firoozye*, Judge Breyer concluded that the plaintiff's conversion claim was preempted by the Copyright Act where the plaintiff alleged that he had provided the defendant, Earthlink, with software he had developed only in order to permit the defendant to evaluate it but that Earthlink subsequently incorporated the software into its own software package without the plaintiff's authorization. 153 F. Supp. 2d 1115, 1117 (N.D. Cal. 2001). The court reasoned that because the conversion claim involved intangible property, the extra element that is found in conversion cases seeking the return of tangible property (which are not preempted) was not at issue. *Id*. at 1130 (citations omitted). It also found that to the extent that "the plaintiff sent [his software] to the defendants and authorized them to use it for their own evaluation . . . he cannot claim that the defendants wrongfully obtained possession over that specific version of the program." *Id*. The court therefore held that the claim amounted to a claim that the defendant "wrongfully reproduced [plaintiff's software] without his permission, the essence of a claim for

22

copyright infringement." *Id.*; *see also Halpern v. Uber Techs., Inc.*, No. 15-CV-02401-JSW, 2015 WL 4572433, at *4 (N.D. Cal. July 29, 2015) (finding that conversion claim based, in part, on alleged conversion of "technology" was preempted based on *Firoozye* because plaintiff was not seeking return of tangible property).

The Court concludes that in this case, PhantomALERT's conversion claim is more like the one in *Firoozye* than the state law claims that were not preempted in *Rasmussen*, *Opperman*, and *Salestraq*. In particular, Plaintiff's allegations do not involve an extra element such as use of copyrighted material to obtain a regulatory permit (*Rasmussen*), invasion of privacy and disclosure of private facts (*Opperman*), or violation of a subscription agreement (*Salestraq*). Further, it is undisputed that PhantomALERT is not seeking return of any tangible piece of property. Rather, the basis for PhantomALERT's conversion claim is that Defendants copied and reproduced its Points of Interest database without Plaintiff's permission, which is also "the essence of a claim for copyright infringement." *Firoozye*, 153 F. Supp. 2d at 1130. [8] Therefore, the Court dismisses PhantomALERT's conversion claim on the basis that it is preempted.

## IV.   CONCLUSION

For the reasons stated above, the Motion is GRANTED. PhantomALERT may file a Second Amended Complaint within thirty (30) days of the date of this order addressing the deficiencies identified in this Order as to its claim for copyright infringement. Defendants, in turn, will have thirty (30) days from the date the Second Amended Complaint is filed to file a motion to dismiss. Because the Court concludes that Plaintiff's conversion claim is preempted under the

---

[8] The court in *Firoozye* states broadly that "while a claim for conversion typically involves tangible property and thus may be immune from preemption, where a plaintiff is only seeking damages from a defendant's reproduction of a work—and not the actual return of a physical piece of property—the claim is preempted." *Id.* (citing *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997) ; *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996)). The undersigned concludes that to the extent this statement goes beyond the holding of that case to suggest that *any* claim for conversion based on unauthorized copying of intangible property must be preempted, it is dicta; this Court declines to adopt such a broad rule. As the cases discussed above illustrate, the extra element in conversion cases involving intangible property can come from other aspects of the claim besides wrongfully obtaining possession of physical property.

23

Copyright Act, the Court dismisses that claim with prejudice.

**IT IS SO ORDERED.**

Dated: March 8, 2016

_____
JOSEPH C. SPERO
Chief Magistrate Judge